CHENEY vs. RINGGOLD, et al. Lessee.

ERROR to the General Court. The defendant in error brought an action of *ejectment* in that court, for a tract of land called *The Number of Two*, situate in *Washington* county, within the *reserve* of Conococheague Manor, and containing 1970 acres of land. The defendant, (the present plaintiff in error,) took defence on warrant, and plots were made. At the trial at May term 1803, the defendant offered in evidence, that several Manors existed in *Maryland* prior to the year 1730, which were the private property of the then Lord Proprietary, and that the following order issued from the Proprietary, on the 28th of June 1731, to lay off reserves on and round his Manors, viz. "Sir, Whereas his Lordship, the right honourable the Lord Proprietary of this province of *Maryland*, hath ordered to make a *resurvey* upon all his Honors, Manors and Lands, and to *enlarge* the same on both shores of this province; I do hereby, in the name and behalf of the right honourable the Lord Proprietary, order and require, that you forthwith cause a reserve to be entered for his Lordship on all vacant lands, rough or cultivated, and on all lands that are or may become escheat or forfeit to his Lordship, *adjoining to any of his said Honours, Manors or Lands*, or within the distance of three miles from them, or any of them; and that you likewise acquaint the several surveyors within this province thereof, that they may behave themselves accordingly. Given under my hand this 28th day of June, Anno Domini 1731.

*Bend't. Leon'd. Calvert.*

To *Philemon Lloyd* Esquire, Deputy Secretary of *Maryland*.

"In pursuance of the above order, a reserve is hereby made for and to the use of his said Lordship, on all vacant lands, rough or cultivated, and on all lands that are

---

*as in possession to the extent of his right*

The act of limitations did not attach or run against the Lord Proprietary on any possession of vacant lands.

---

*Margin notes:*

1807.

Cheney
vs
Ringgold.

DECEMBER.

Whether or not 20 years exclusive and unmixed possession of a tract of land by cultivation and general use, without an actual enclosure, is such a possession as will bar a recovery in ejectment? *Quere.*

Whether or not 20 years possession of a part of a tract of land by actual cultivation and enclosure, with an exclusive and unmixed enjoyment of all exterior to the enclosure, by sparsim cutting, and general user, will bar a recovery in ejectment of the parts not enclosed? *Quere.*

Where the plaintiff with title, having possession by enclosure and cultivation of a part of a tract of land, claiming the whole, and the defendant, without title, having possession by enclosure of a part of the same tract, with the use (by cutting timber, &c.) of the other parts not enclosed, the plaintiff is bound by the act of limitations as to that part of the land which is in the possession of the defendant by actual enclosure for more than 20 years next preceding the bringing his ejectment, but not as to the parts used by the defendant exterior to the enclosure.

When two are in mixed possession of the same land, one by title, and the other by wrong, the law considers him, having the title,

or may become escheatable, or any ways forfeit to his Lordship, adjoining to any of his Honours, Manors or Lands, or within the distance of three miles from them, or any of them. To all concerned." The defendant then read in evidence, the certificate of *Conococheague Manor*, whereby was resurveyed on the 25th of October 1736, by order of *Samuel Ogle*, Esquire, Governor of *Maryland*, for the use of the Lord Proprietary, his Lordship's Manor of land, lying in *Prince George's* county, called *Conego-cheig Manor*, according to its first intended bounds, beginning, &c. containing 10,594 acres of land. He then read in evidence the warrant which issued on the 6th of June 1752, to *Charles Cheney*, for 50 acres, he having paid 50s. sterling, caution for the same; and he offered to prove, that in pursuance of that warrant, a survey was made for *Cheney* on the 15th of November, 1752, and a certificate thereof returned in 1762, for a tract of land called *Cheney's Delight*, containing 96 acres of land, to be held of *Conegocheigue Manor;* and that the certificate of survey was examined and passed on the 30th of March 1754, and the composition money was paid thereon in April 1762. He also offered to prove, that *Cheney* immediately after the survey, entered on the land, claiming the whole as his right and property, and died in possession thereof in 1780; and that the certificate of survey, and the land therein included, called *Cheney's Delight*, are truly located by the defendant on the plots in this cause. And that *Cheney* built on, improved and cultivated part, and cut and used the wood growing thereon, claiming the whole until his death, as his right and property; and that the defendant, on the death of *Cheney*, his father, entered on the said land, claiming the whole as his property, according to the location and certificate aforesaid. And that *Cheney*, the ancestor, and the defendant, planted orchards, and held by actual enclosure and cultivation for more than *twenty-seven* years next preceding the bringing of this ejectment, all that part of *Cheney's Delight* which is contained within the lines shaded blue, as located and described on the plots, claiming the enclosed land, and the whole of the tract, as their own proper estate and right; and that all the land, as located within *Cheney's Delight*, exterior to the enclosures shaded blue, has been claimed and used by *Cheney*, and those claiming under him, as part of *Cheney's*

*Delight*, exterior to the enclosures shaded blue, has been claimed and used by *Cheney*, and those claiming under him, as part of *Cheney's Delight*, ever since the year 1762, by cutting wood and rail, and other timber thereon, for the use and purposes of their dwelling and farm, on said land; and that no other person whatever has at any time used, enjoyed, or cut any of the wood or timber on the land, except *Cheney*, and that no person has claimed the same, or any part thereof, except that a claim has been set up by the lessors of the plaintiff, and those under whom they claim. That *Cheney's Delight* is included within the lines of a tract of land called *The Number of Two*. The plaintiff then showed in evidence, that on the certificate of survey of *Cheney's Delight*, no patent ever issued, and that the reason why a patent was refused upon that certificate, is indorsed thereon in the words following, viz. "No patent to issue on this certificate, by order of his Excellency, being within the reserve of *Conegocheigue*.

Test. *W. Steuart*, Clk."

He then offered in evidence a patent for *The Number of Two*, (being part of the reserve around *Conegocheigue Manor*,) granted to *John Morton Jordan* on the 15th of July 1768, and which is the land for which this ejectment is brought, and which is truly located on the plots. He then read in evidence a deed from *Jordan* to *Thomas Ringgold*, dated the 26th of October 1770, for the land called *The Number of Two*; also the will of *Thomas Ringgold*, dated the 16th of February 1774, whereby he devised the said land to *Benjamin Ringgold*, his son, in fee simple. And he proved, that *B. Ringgold* died on the 26th of August 1798, without child, and intestate, whereby the said land descended to his three brothers, *Thomas*, *Samuel*, and *Tench*, and his sister *Anna Maria*, who before this ejectment was brought was and still is a married woman, the wife of *Frisby Tilghman*; that the last named *Thomas Ringgold*, by deed of bargain and sale, on the —— day of October 1798, conveyed all his interest in the said land to his two brothers *Samuel* and *Tench*, which said *Samuel* and *Tench*, together with *Frisby Tilghman*, and *Anna Maria* his wife, are the lessors of the plaintiff. That *Jordan*, the patentee, entered upon *The Number of Two*, claiming title to the whole thereof, according to his right, until he sold the same to *Thomas Ringgold*. That *T. Ring-*

*gold*, after the conveyance from *Jordan* to him; *B. Ring-gold*, after the death of his father, by his guardian and by himself; and the lessors of the plaintiff, after the death of *B. Ringgold*, respectively entered upon the said land, and by himself and themselves, and his and their tenants, possessed and enjoyed a part thereof by actual cultivation and enclosure; and claimed title to the whole thereof, according to his and their respective rights, viz. *T. Ringgold* until his death in November 1776; *B. Ringgold* until his death in August 1798; and the lessors of the plaintiff until the time of bringing this ejectment. That *Jordan* resided in the city of *Annapolis*, distant from the land upwards of 100 miles. That *T. Ringgold*, the elder, resided at *Chester-Town* in this state, distant upwards of 200 miles from the land; and that the guardian of *B. Ringgold*, during his minority, resided upwards of 100 miles from the land. That *B. Ringgold* was born on the 6th of January 1774, and on the 17th of September 1796, in the name of his lessee, he instituted an action of ejectment against the present defendant, in the general court, for the recovery of the land now sued for by the present plaintiff, against the present defendant; and that the action was depending and undetermined when *B. Ringgold* died, and that it did abate by his death, and was so entered at October term 1798. The plaintiff also offered in evidence, by the same witnesses who were examined by the defendant, that they, the witnesses, always understood that *Cheney's Delight* was alleged to lie within the reserve of *Conogocheague Manor*, and therefore the owners of *Cheney's Delight* could not obtain a patent therefor. The defendant then prayed the opinion of the court, and their direction to the jury, that if they find the facts as stated by the defendant, that then the lessors of the plaintiff were barred from making title to any part of *Cheney's Delight*, for the reason that the same was included in the lines of *The Number of Two*, for which the ejectment is brought.

CHASE, Ch. J.*(a.)* The court refuse to give the direction prayed, being of opinion that nothing less than twenty years adverse possession, by actual enclosures, will bar or defeat the title of the plaintiff in this case. The defendant excepted. *Verdict* for the plaintiff according to his pre-

*(a) Done,* and *Sprigg,* J. concurred.

tensions, except as to the lands located on the plots as included in lines shaded blue, as to which, verdict for the defendant. Judgment being rendered on the verdict for the plaintiff, the defendant brought a writ of error to this court.

At December term 1806, the cause was argued before BUCHANAN, NICHOLSON, and GANTT, J.

*Key, Shaaff,* and *Hughes,* for the plaintiff in error, in their arguments cited 3 *Blk. Com.* 209. *Cullen vs. Johnson,* 2 *Stra.* 1142. *Fisher vs. Prosser, Cowp.* 217. *Esp. N. P.* 434. *Ridgely's Lessee vs. Ogle & Leonard,* 4 *Harr. & M'Hen.* 123. *Ringgold's Lessee vs. Malott,* 1 *Harr. & John.* 299. *Russell's Lessee vs. Baker, Ibid* 71.

*Martin, Mason,* and *Johnson,* (Attorney-General,) argued for the defendant in error.

*Curia Ad. Vult.*

At this term the court pronounced their judgment.

BUCHANAN, J. The facts stated in the bill of exceptions taken in this case are, that prior to the year 1730, several manors existed in *Maryland,* which were the private property of the then Lord Proprietary; that on the 28th of June 1731, an order issued from the Lord Proprietary to lay off *reserves* on and around all his manors; that an order, the date of which does not appear, issued from *Samuel Ogle,* the then governor of *Maryland,* to resurvey for the Lord Proprietary his manor called *Conogochiegue Manor,* in pursuance of which order, that manor was resurveyed, and a certificate thereof, dated the 25th of October 1736, was made out by the proper officer, and returned to the land office; that a reserve was laid off, on and around the said manor, and that afterwards, on the 6th of June 1752, *Charles Cheney* obtained a warrant from the land office; in pursuance of which a survey was made by the proper officer for and in his name, on the 15th of November 1752, of a tract of land called *Cheney's Delight,* and a certificate thereof made out, which was examined and passed by the examiner general on the 30th of March 1754, and returned to the land office on the 17th of April 1762, when the composition money thereon, and the rent to that day were paid, and on the 10th of June 1767, the rent to that time was also paid; that on

this certificate a patent was refused, because *Cheney's De-light* lay within the reserve of *Conogochiegue Manor*, and that no grant has ever issued thereon; that on the 7th of March 1769, *John Morton Jordan* obtained a patent for a tract of land called *The Number of Two*, being a part of the reserve around *Conococheague Manor*, from whom the legal title to *The Number of Two* is regularly deduced to the lessors of the plaintiff, and that *Cheney's Delight* lies within the lines of *The Number of Two*. That *Charles Cheney*, for whom *Cheney's Delight* was surveyed, and the defendant in the court below. have lived thereon ever since the survey, using the parts exterior to the enclosures ever since the year 1762, by cutting wood, rails, and other timber thereon, for the use and purposes of the farm; and for more than twenty-seven years next preceding the institution of the suit, have been in the actual possession, by cultivation and enclosure, of a part of the land lying within the lines of *Cheney's Delight*, claiming title to the whole; and that the lessors of the plaintiff, and those under whom they claim, have, ever since the grant of *The Number of Two*, possessed and enjoyed a part thereof by actual cultivation and enclosure, claiming title to the whole, according to their right. It is contended, that the order to lay reserves around the manors of the Lord Proprietary, dated the 30th of June 1731, was not applicable to the *Conococheague Manor*, which, as it is said, was surveyed in the year 1736, subsequent to the date of that order; that therefore the reserve on that manor was unauthorised and void, and that a patent for *Cheney's Delight* was improperly withheld. But the certificate of *Conococheague Manor*, dated the 25th of October 1736, is evidently a certificate of resurvey recognizing an original, and having for its foundation an order from the then governor of *Maryland* to resurvey *Conococheague Manor*, and for any thing appearing in the record, the original survey of that manor may have been anterior to the date of the order to lay off reserves. But whether anterior or not, a reserve was made around *Conococheague Manor*, and afterwards the warrant granted to *Cheney* on the 6th of June 1752, was located, (as appears by the aforegoing statement of facts,) within the lines of that reserve; and for that reason it was ordered and determined, that a patent should not issue on the certificate of *Cheney's Delight.* And whether the

judgment of the judges of the land office, was correct or not, or whether the reserve laid off on *Conococheague Manor* was properly or impropei ly made, is not now for us to decide, nor is it material in the consideration of this case.

A patent did issue for *The Number of Two*, which does not appear to have been ever vacated; and so long as it remains unvacated, if there is no elder patent covering the same land, or other grant overreaching it in law, (neither of which appears,) it operates to vest in the patentee, and those claiming under him, the title to all the land lying within its lines, whether the order to lay off reserves is applicable to *Conococheague Manor* or not, and whether a patent for *Cheney's Delight* was properly or improperly withheld.

To recover *The Number of Two*, this suit was instituted, and defence was taken for *Cheney's Delight*, which, it appears, lies within the lines of *The Number of Two*, and for which no patent ever issued. Therefore the defence taken, was not on title derived by grant, but grew out of the possession in the defendant, and *Charles Cheney*, under whom he claims, of a part of *Cheney's Delight*, by actual enclosure for more than twenty years before the time of bringing this suit, with a continued enjoyment from the year 1762, of the parts not enclosed, by cutting timber, &c. exterior to the enclosures. Hence the only question is on the operation of the act of limitations upon that possession.

I shall not go into an examination of the questions, whether twenty years exclusive and unmixed possession of a tract of land by cultivation and general use, without an actual enclosure, is such a possession as will bar a recovery in an action of ejectment? Or whether twenty years possession of a part of a tract of land by actual cultivation and enclosure, with an exclusive and unmixed enjoyment of all exterior to the enclosure by spacein er by and general user, will bar a recovery in ejectment of the parts not enclosed? For although they are questions of considerable importance in this state, and whatever my opinion touching them may be, yet as they are not involved in this cause, it is not necessary, nor perhaps would it be proper, to decide upon them now.

The question in the court below grew out of the facts existing in the cause; and that the opinion, from which this is an appeal, was given upon those facts, and with a view to the particular case then under consideration, is evident from the opinion itself, which is in these words: "Nothing less than twenty years adverse possession by actual enclosure will bar or defeat the title of the plaintiff in this case." And I concur with the general court in that opinion, admitting all the facts stated in the bill of exceptions to be true.

This is a case of two conflicting claims, in which the pretensions of both parties are set out. The lessors of the plaintiff with title, having possession by enclosure and cultivation of a part of the tract of land in dispute, claiming the whole; and the defendant without title, having possession by enclosure of a part of the same tract of land, with the use (by cutting timber, &c.) of other parts not enclosed. As to that part of the land which was in the possession of the defendant, and his ancestor, *Charles Cheney*, by actual enclosure for more than twenty years next preceding the bringing of this suit, the plaintiff is bound by the act of limitations; but not as to the parts used by the defendant exterior to the enclosure.

When two are in mixed possession of the same land, one by title, and the other by wrong, the law considers him having the title as in possession to the extent of his right.

The act of limitations did not attach or run against the Lord Proprietary on any possession of vacant lands; and even if it could have run against him as to the land in question, he was not barred by the possession of *Charles Cheney* on the 7th of March 1769, the date of the grant of *The Number of Two*.

And whatever might have been the effect in law of the use made by the defendant, and his ancestor, of those parts of *The Number of Two*, claimed by them exterior to the enclosures by sparsim cutting, for twenty years next preceding the institution of this suit, in case the purchaser had never entered and obtained possession before or during that user, and no mixed possession had followed; yet in this case it is stated, that *John Morton Jordan*, the grantee of *The Number of Two*, and those claiming under him, did immediately after the date of the grant, and

within 20 years from the commencement of any possession in *Cheney*, enter upon and take possession of a part of *The Number of Two*, by actual enclosure and cultivation, claiming title to the whole, and have ever since so possessed and claimed; and the possession of part, gives in law a constructive possession of the whole. This principle may be extended to both parties in this case, and each may be considered as having been in possession of the land claimed by him, according to his right, and the true extent of his lines, with the exception of the parts enclosed by the other—the defendant of *Cheney's Delight*, and the lessors of the plaintiff of *The Number of Two*, which includes all *Cheney's Delight*; or in other words, the defendant of a part of *The Number of Two*, according to certain alleged lines, and the lessors of the plaintiff of all *The Number of Two*, except the parts thereof enclosed by the defendant. Their possessions, therefore, of those parts of *Cheney's Delight* not enclosed, or rather of the unenclosed parts of *The Number of Two*, claimed and used by the defendant, (for there appears to be no such grant as *Cheney's Delight*,) were mixed or conflicting possessions, on which the statute of limitations could not attach or run, so as to bar a recovery by the plaintiff, who, if the facts stated in the bill of exceptions are true, is the legal owner.

Even if the defendant's possession by enclosure commenced first, which is not stated to be the case, that, and his cutting timber exterior to the fences, could not have prevented the constructive possession vesting by operation of law, in *Jordan*, of all the unenclosed parts of *The Number of Two*, on the actual entry and enclosure made by him, and those claiming under him, upon a part of that tract of land, within twenty years from the date of the grant, claiming title to the whole. But if the possession, by enclosure, of the lessors of the plaintiff, and those under whom they claim, commenced first, and for any thing appearing in the record that may have been the fact, surely no cutting, &c. by the *Cheneys*, exterior to their enclosures, could so divest the possession, cast by law upon the plaintiff, of the unenclosed parts of *The Number of Two*, as to let in the operation of the act of limitations.

Upon the whole, I consider the question in this case to be, whether twenty years mixed possession of unenclosed

1807.

Owings
vs
Norwood

lands can operate to bar a recovery in ejectment by the rightful owner, he being one of the possessors?

On this question I feel no doubt, and therefore am of opinion that the judgment of the general court ought to be affirmed.

NICHOLSON, J. concurred.

GANTT, J. dissented.