## Case No. 11,347.

### POTTS v. GILBERT.

[3 Wash. C. C. 475.] [1]

Circuit Court, D. Pennsylvania. April Term, 1819.

ADVERSE POSSESSION — LIMITATIONS IN PENNSYLVANIA.

1. The statute of limitations of Pennsylvania is substantially the same as that of 21 Jac. I. c. 16. The limitation begins to run from the time of an actual adverse possession, and not before.

[Cited in Armstrong v. Risteau, 5 Md. 273; Scott v. Woodruff (Ark.) 4 S. W. 911. Cited in brief in Mason v. Crowder, 85 Mo. 528.]

2. A grant from the commonwealth of Pennsylvania, passes a legal possession to the grantee, which continues until disturbed by an actual adverse possession. The title vests in the grantee, upon the return and acceptance of the survey and payment of the purchase money; and the legal possession vests at the same time.

3. Adverse possession must continue, in point of locality, during the twenty-one years. A possession of part of a tract of land, short of twenty-one years, cannot be joined to a possession of another part, so as to make up the period. The possession of different intruders, in succession upon the same part of the tract, cannot be added together by the last intruder, so as to make up twenty-one years of adverse possession, against the real owner.

[Distinguished in Barger v. Miller, Case No. 979.]

[Cited in Allen v. Holton, 20 Pick. 465; Armstrong v. Risteau, 5 Md. 275. Cited in brief in Brolaskey v. McClain, 61 Pa. St. 158. Cited in Hole v. Rittenhouse, 25 Pa. St. 493; McEntire v. Brown, 28 Ind. 349; City & Co. of San Francisco v. Fulde, 37 Cal. 354; Sawyer v. Kendall, 10 Cush. 245; Scott v. Woodruff (Ark.) 4 S. W. 911.]

4. The possession of the disseisor, to bar the plaintiff, can never extend beyond the limits of the particular spot upon which he is seated; and the legal possession of the owner continues unaffected as to the residue of the tract, by such tortious possession; and his legal possession revives, the moment the intruder quits the part of the tract he may have occupied.

[Cited in brief in Ament v. Wolf, 33 Pa. St. 335. Cited in City of St. Louis v. Gorman, 29 Mo. 602; Goewey v. Urig, 18 Ill. 241; Melvin v. Locks & Canals, 6 Metc. (Mass.) 32. Disapproved in Scheetz v. Fitzwater, 5 Pa. St. 131. Cited in brief in Taylor v. Burnside, 1 Grat. 182. Cited in Wells v. Austin (Vt.) 10 Atl. 410.]

5. A sale, by one intruder to another, without an exact definition of the property conveyed, will not aid the purchaser in establishing a continued adverse possession. Semble, that an in-

truder, who has not had twenty-one years' possession, has no title to convey.

[Cited in Casey's Lessee v. Inloes, 1 Gill. 501. Cited in brief in Faloon v. Simshauser, 22 N. E. 835, 130 Ill. 650.]

This was an ejectment to recover 300 acres of land. The plaintiff produced a regular title from the commonwealth of Pennsylvania, commencing with a warrant in 1784; payment of the purchase money in the same year; return of survey in the year 1788; and a patent in 1800. The defendant produced a special warrant, dated in 1773, for the same land, to Samuel Clark; and a survey of the same, in 1803, with an endorsement "that it interfered with the survey of Potts," under which the lessee of the plaintiff claimed.

On the part of the plaintiff, it was proved, by the deposition of Jonathan Stevens, a deputy-surveyor, that, in the year 1813, or 1814, the defendant applied to him to know if this land was vacant—saying, that if it was so, he wished to purchase it from the state; if otherwise, he wanted to discover who had the office title. The witness informed him, that a warrant for this land had issued to Samuel Clark, in 1773, which had been surveyed in 1803.

On the part of the defendant, the following depositions were read: N. Hicock, who stated, that, in 1794, one Eickter sent a person on the land, to build a cabin. In 1795, that there was a sugar bush on it. That part of Eickter's family resided on the land in 1794. In 1795, Gibson, with his family, resided on the premises, in a comfortable house, having a small piece of ground cleared. There has been, ever since, some person on the land; and there is now 20 or 30 acres cleared. R. Gough deposed, that, in 1793, Eickter went on the land, with part of his family;—in the fall of the same year, Gibson bought him out, and went on; and there has been, ever since, some person on the land,—understood that they claimed only by possession. J. Lewis deposed, that, in July, 1794, Gibson lived on the land—had a good house, and four acres in corn. Gibson bought of one Means, and sold to Dougherty, who lived eighteen years on the land, and then sold to Bowman, who sold to the defendant. There has always been one or more families on the land, since he knew it. The deed from Dougherty to Bowman, dated in 1810, and from Bowman to the defendant, dated in 1813, were given in evidence. Stacey Potts was examined by the plaintiff, who stated, that, in 1810, the defendant applied to him to buy this land; but, on account of Clark's survey, he declined selling. This suit was commenced in the year 1817.

Ingersoll & Baldwin, for defendant, contended, 1st. That the warrant and survey of Clark, showed the title to be out of the plaintiff. 2d. That the plaintiff was barred by the act of limitations of this state, as he

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

had made no entry on the land, from the year 1788; and that an adverse possession had continued, since the year 1793, exceeding the twenty-one years mentioned in the statute. They therefore claimed a verdict for 200 acres, the quantity conveyed by Dougherty to Bowman, and by Bowman to the defendant. They further contended, that the jury ought to presume a conveyance from Clark to Eickter, and conveyances by the different persons who came into possession, to their successors. Cases cited: 1 Phil. Ev. 119; 2 Esp. 6; Ball. Lim. 32; 4 Taunt. 16; Cowp. 215; 2 Inst. 118.

Tilghman & Sergeant, for plaintiff, contended, that a possession to defeat the right of the plaintiff, by virtue of the act of limitations, must be actual, adverse, and continuing, under a claim or colour of title; without which, the presumption is, that the possession was not adverse; and that, at all events, if all these requisites were proved, which they denied to be the case, still the defendant could not protect more than the land actually held by adverse possession, which ought to be designated. Cases cited: 1 Johns. 158; 2 Johns. 230; 3 Johns. 388; 9 Johns. 163, 174; 10 Johns. 475. Also, Hall v. Powel [4 Serg. & R. 462], decided in the supreme court of this state; [Greene v. Liter] 8 Cranch [12 U. S.] 229; 2 Caines, 183; 3 Johns. Cas. 124.

WASHINGTON, Circuit Justice (charging jury). The only defence, seriously relied upon in this case, is the act of limitations; because, as to the title of Clark, it cannot be used against the plaintiff, whose title was perfected in the year 1800, three years before Clark's warrant was even surveyed; and this was not accomplished, until thirty years after the date of the warrant; nor was any part of the purchase money ever paid. The statute of limitations of this state, is, in substance, the same as that of 21 Jac. I. c. 16; and declares, that no entry shall be made on land, but within twenty-one years next after the right or title to the same descended or accrued. In the construction of both statutes, it has always been held, that the actual entry of the owner, is not necessary to prevent the operation of the law, unless an actual adverse possession is taken by a stranger; from which time, and not before, the limitation begins to run. The grant of land, by the government, passes at once to the grantee the legal possession, as well as the title; which continues, until he is disturbed by an actual adverse possession. This was decided in the case of Greene v. Liter, 8 Cranch [12 U. S.] 229. According to the law, as decided in this state, the title of the commonwealth vests in the grantee, upon the return and acceptance of his survey, and payment of the purchase money; and, consequently, the legal possession must be vested in him at the

same time. The adverse possession before mentioned, must not only continue, but it must continue the same, in point of locality, during the prescribed period of time, sufficient to constitute it a bar; that is to say, a roving possession from one part of a tract of land to another, cannot bar the right of entry of the owner, upon any part of the land which had not been held adversely for twenty-one years, although the different periods of possession of the separate parcels, should amount, in the whole, to that number of years. For, it is a clear principle of law, that the right acquired by the adverse possession of a disseisor, or of one who enters, or retains possession by wrong, can never extend beyond the limits of the particular spot to which his occupation is confined. If he could go beyond these limits, there would exist no other to circumscribe his claim. He cannot resort to the metes and bounds of the tract upon which he has settled; because the legal possession of the owner continues unaffected by the tortious entry, except so far as the actual adverse possession has disturbed it. The legal owner is constructively in possession of the whole tract, because his title extends to the whole;—a wrongdoer can claim nothing in relation to his possession by construction.

Whether, to support the possession of a person who enters without title, and who encloses, improves, and cultivates it, and continues the same peaceably for the space of twenty-one years; it is incumbent upon him to show that such possession was taken and continued under a claim or colour of title; is a question of great importance, and in our opinion of no small difficulty. The affirmative of this question, seems to be maintained by the learned judges of New York, and the opinion is therefore entitled to our highest respect. Our own mind is not decided upon the point; and as it is not material to the decision of this case, we shall express no opinion upon it. But the court is perfectly clear, that where different persons enter upon land in succession, each retaining the possession for a period short of twenty-one years, the last possessor, who may be the defendant, cannot tack the possessions of his predecessors to his own, so as to make out continuity of possession, sufficient to bar the entry of the owner. The possession of A, the first occupant, cannot be the possession of B, the next occupant; because the moment A quits the actual possession, the legal possession of the real owner is restored, and the entry of B constitutes him a new disseisor; and if he seek to bar the entry of the owner, he must show an actual adverse possession, continued in himself for twenty-one years. There is no privity between A and B. Neither do we think the present case is strengthened, in favour of the defendant, by the evidence of the witnesses, that the several occupants sold to their successors. Nothing can be more vague than

this testimony. It does not state, that any conveyances were executed, or what each person sold;—whether it was title, possession, or good will; or whether any two of the sales were applicable to the same spot. Indeed, what had any of them, in point of title, to sell? Not only is an adverse possession to bar an entry, to be confined to the particular parcel so occupied, but some evidence should be given to show the location of such parcel, that it may be seen, whether the continuity of possession, during the whole period, was applicable to it or not.

Verdict for plaintiff.