# Daniel J. Hoye *vs.* James Swan and others' Lessee.

The act of 1839, ch. 34, is a supplement to that of 1818, ch. 90, and, in addition to the privilege given by the latter, enables possessors for twenty years of *vacant* lands, to obtain, without the delay of the land office forms, patents therefor, good against the State and all persons claiming by *subsequent* grant, but not conclusive against *all persons;* such patentees take *subject* to the rights of other persons.

The State may take private property for public purposes, but has no right to take one man's land and give it to another; she cannot any more than a citizen grant what she does not own.

Exclusive and unmixed possession for more than twenty years by a *wrongdoer,* without *actual enclosure,* is *not* a bar to an ejectment by the legal owner, though the latter may never have been in *actual possession* of any part of the land.

The case of *Brooke vs. Neale*, cited in *Dorsey on Ejectment*, 40, does not decide that exclusive and unmixed possession for twenty years, without actual enclosure, will, in the case of a *wrong-doer*, give title and bar an ejectment, for the defendant there was *not* a wrong-doer at the time of his entry.

Deforcement is a privation of the freehold where the entry of the present tenant or possessor was originally lawful, but his detainer has now become unlawful.

Where a party, *bona fide*, enters and claims under title, he acquires in law actual possession to the extent of the boundaries contained in his title, whether it be *valid or not*, but the possession of a *wrong-doer* does not extend beyond *actual enclosure*.

As against a wrong-doer claiming title by possession alone, the law in this State is the same, whether the real owner be in actual possession of any part of the land or not.

Title to lands from the State draws the seisin or actual legal posses̸     ̸ it, so that one having such title is, by force thereof, in possession of the whole, until ouster or disseisin committed by some one entering upon the land with claim of possession adversely to him.

Where one has such possession of lands as is insufficient to give title by adverse possession, and another succeeds him, holding the land in the same manner, the imperfect possession of the former, when united to that of the latter, cannot make it adverse, continuous and exclusive as against the real owner.

APPEAL from Allegany County Court.

*Ejectment* by the appellees against the appellants for a tract of land called "*Skipnish*," patented to John Swan, under whom the plaintiffs claim, in 1803. They proved their legal title to the land, but offered no evidence of possession. The defendant then offered in evidence the act of 1839, ch. 34, a certificate of survey thereunder, made on the 1st of August 1841, for John Hoye, for a tract of land called "*Ratler*," which embraced a large portion of "*Skipnish*," the assignment of this certificate by said Hoye to defendant, dated the 12th of March 1842, a patent for "*Ratler*," issued to defendant on the 4th of April 1842, and the deposition of James Childs, taken at the execution of the warrant of resurvey in the case and returned therewith, which is fully stated in the opinion of this court. Upon this evidence the defendant asked *four* instructions to the jury:

1st. That his patent for "*Ratler*," under the act of 1839,

ch. 34, operates as a bar by limitation to the recovery of the plaintiffs in this action.

2nd. That the patent for "*Ratler*" is evidence of the adverse possession of that tract by John Hoye, claiming title to the same for twenty years prior to the date of the survey mentioned in the certificate of survey.

3rd. That if the jury believe from the evidence that defendant and those under whom he claims have been in the possession of the land located on the plats as his claims and pretensions, by enclosure of a part and exercise of acts of ownership over the whole, claiming the same as their own for more than twenty years prior to the commencement of this suit, then such ———— a bar to the plaintiffs' suit, unless they find that the plaintiffs, or those under whom they claim, have been in actual possession of some part of their claims and pretensions, as located upon the plats within that period.

4th. That if the jury believe from the evidence that the defendant and those under whom he claims have been in the adverse, uninterrupted and exclusive possession of a part of the land for which he takes defence on the plats by actual enclosure, and of the residue by *sparsim* cutting and general user for twenty years prior to the institution of this suit, they are bound to presume a deed to the defendant, or to John Hoye from John Swan, or those under whom the plaintiffs claim, for all the land located upon the plats as the claim and pretensions of the defendant within the lines of "*Skipnish,*" unless they find that during said twenty years the plaintiffs, or those under whom they claim, have been in the actual possession of some part of "*Skipnish.*"

The plaintiffs then asked an instruction, that defendant is not entitled, under the evidence in this cause, for the purpose of making out a title by possession to the land for which this suit is brought, or any part thereof, to avail himself of the possession of John Hoye, as shown by the affidavit of James Childs.

The court, (MARTIN, C. J., and WEISEL, A. J.,) granted the plaintiffs' prayer and rejected all of the defendant's, assigning as a reason for the rejection of the *third*, "that there was no evidence that any part of '*Skipnish*' was enclosed," and

of the *fourth* the same reason, and also "that there was no evidence connecting the possession of John Hoye with that of the defendant." To each of these rulings the defendant took *separate* exceptions, making five in all, and the verdict and judgment being against him he appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, and TUCK, J.

*Geo. A. Pearre* for the appellant.

1st. The defendant's *first* and *second* prayers raise the question, for the first time in this court, as to the construction of the act of 1839, ch. 34. This act is a supplement to the act of 1818, ch. 90, and is an *executed statute of limitations.* Prior to the act of 1818, adversary possession of *ungranted* lands was no bar to the party acquiring the legal title from the State, (2 *H. & J.*, 112, *Hall vs. Gittings;* 3 *Do.*, 531, *Steuart vs. Mason,*) and to remedy *this defect* that act was passed. Now what was the object of the act of 1834? It had *some design*, and was intended to confer some rights not granted by the former act. It could not be intended to enable a party to get the legal title so that he may recover against the party *in possession;* on the contrary, it contemplates that the proceedings under it shall be taken by the party in *actual possession*, by well defined metes and bounds, and claiming to be the owner. It was not intended simply to enable the party to offer proof *at the trial* of the *fact* of possession, for this he could do under the act of 1818. My construction therefore of the act is, that it applies to parties who are in possession of *any lands, whether vacant or not*, and enables them to give *executed and conclusive* proof of this possession; it enables them to take their proof whilst the witnesses are living, and if they can obtain *a patent* under it, that this shall be a *conclusive bar* to an action of ejectment by any person, whether the legal owner or not. It is not *ex-parte*, for it gives the world *notice* of the application—the surveyor is to be *satisfied* of the fact of possession by the oaths of two

witnesses, and other parties may come in and contest it. It is not an anomaly in the law of this State, for the act of 1786, ch. 33, to *mark and bound lands*, is similar to it and quite as much *ex-parte*. 1 *H. & J.*, 155, *Lowes vs. Holbrook*. As to the principles which are to govern the construction of this statute, and that it is to be construed in connection with that of 1818, as part of a system, see 6 *H. & J.*, 382, *The Mayor, &c., vs. Moore and Johnson*, and 4 *G. & J.*, 1, *Canal Co. vs. Rail Road Co. Dwarris on Statutes*, 700.

2nd. The *third* and *fourth* prayers raise questions independent of the act of 1839. The possession of a part of a tract of land by enclosure, and exercise of ownership over the whole for more than twenty years prior to suit brought, is a bar to a recovery, unless the plaintiff, or those under whom he claims, has been in *actual possession* of part within that period. I do not controvert the position that if the plaintiffs had been in *actual possession* of part of "*Skipnish*," with *title to the whole*, their possession would, *by construction*, be extended to the whole; nor do I deny that, in cases of *mixed possession*, to constitute adverse possession against the real owner there must be *actual enclosure*, but I maintain that our third prayer could not have been refused, unless the proposition can be sustained that a *mere naked legal title* alone, without any possession, makes a case of *mixed* possession as against the party in actual possession. My position is, that in order to make a case of *mixed possession* the party having the legal title must be in *actual possession of part;* this is the principle which pervades all the authorities. In *Cheney vs. Ringgold*, 2 *H. & J.*, 94, the plaintiff, the real owner, was in possession *of part*, claiming title to the whole. So in all the cases cited and commented upon in *Dorsey on Ejectment*, 36 *to* 40. Legal title is one thing, and entry and possession under such title is a different one. In *Casey vs. Inloes*, 1 *Gill*, 496, 497, it is said, *possessio pedis* of part by the real owner, is necessary to carry constructive possession to the extent of his title; and in page 500, the court say, that *such* a case is one of *mixed possession*, and then the adverse possession must be by

31    v.5

actual enclosure. But where there is no *mixed possession,* enclosure is not necessary to constitute adverse possession. Twenty years possession of land, whether enclosed or not, will bar an ejectment in all cases where the real owner has no possession of any part of the land. This is established as Maryland law by the case of *Brooke vs. Neale,* in manuscript, decided in 1829, and cited in *Dorsey on Ejectment,* 40, 41. The cases of *Jackson vs. Camp,* 1 *Cowen,* 609; *Cresap vs. Hutson,* 9 *Gill,* 269, and *Miller vs. Shaw,* 7 *Seargt. & Rawle,* 129, where the doctrine of adverse possession *by enclosure* is so broadly asserted, were cases of *mixed possession,* the real owner in each having *actual possession of part.* As to the question of the presumption of a deed raised by our fourth prayer, see 6 *H. & J.,* 351, *Beall vs. Lynn.* 2 *Starkie on Ev.,* 663. 1 *Greenlf. on Ev., sec.* 17. 1 *Camp.,* 465, *Balston vs. Bensted.* 6 *East,* 215, *Bealey vs. Shaw.*

3rd. The plaintiffs' prayer was erroneously granted, because, as we insist, the defendant was entitled to avail himself of the possession of John Hoye by way of defending his possession. If the defendant claimed under Hoye he could avail himself of his possession, and whether he did so claim was a question for the jury. *Adams on Eject.,* 505. 2 *H. & McH.,* 76, *Helms' Lessee, vs. Howard.*

*William Price* for the appellees.

1st. The act of 1839 is one of those specimens of crooked legislation, that sometimes get through the legislature nobody knows how, and was repealed soon after its passage. Such as it is, however, it must receive a construction. That put upon it by the other side would make it retroactive, and in effect it would take away the plaintiffs' land and give it to the defendant, who, without it, would not have the shadow of a title. But such is not its construction. It intended to settle rights between the State and its grantee, and not to interfere with *third parties.* The act of 1818 taken in connection with it makes this view plain. That act, while it acknowledged that possession of *ungranted lands* might grow

Hoye *vs.* Swan's Lessee.

up into a right, gave *no patent*, while the act of 1834 grants *a patent* for such lands; it does what the previous act omitted.

2nd. The defendant was a mere *tort feasor*, entering upon the land without a shadow of title. Now to enable such a party to gain title by adverse possession against the legal owner there must be actual *enclosure.* It is a settled principle, that title to land from the State draws the seisin or actual legal possession to it, so that one who has such title is by force thereof in possession of the whole, until an ouster or disseisin is committed by some one entering upon the land with a claim of possession adversely to him, (2 *Smith's Leading Cases*, 413,) and such intruder is confined to what he has grasped; he must show an exclusive adverse possession by *actual enclosure, substantial, definite, positive and notorious*, and his claim cannot extend beyond such enclosure, for beyond that the owner's possession has never been changed. 9 *Gill*, 276, *Cresap vs. Hutson.* 1 *Gill*, 500, *Casey vs. Inloes*, and cases there cited. In such a case the real owner need not have actual possession *of part*, but may rely upon his constructive statutory possession under his patent. As to the presumption of a deed: the defendant had adduced a title inconsistent with such a presumption. The patent for "*Ratler*" was not withdrawn, and it stands in the way of a presumption of title.

3rd. Our prayer was correctly granted, because a trespass cannot be transferred. Successive possessions even cannot be made use of to make up the twenty years' adverse possession without a *record* conveyance.

Tuck, J., delivered the opinion of this court.

This is an ejectment for a tract of land called "Skipnish," in Allegany county, patented to John Swan, under whom the plaintiffs claim, in 1803. The defendant below (the appellant) claims title to a part of this tract under a survey made for John Hoye, in pursuance of the act of 1839, ch. 34, the certificate of which was assigned to the appellant and a patent issued to him, on the 4th April 1842, for "Ratler."

The plaintiffs proved their legal title, but offered no evidence of possession. The defendant offered in evidence the act of 1839, ch. 34, the certificate, assignment and patent for Ratler, and the deposition of James Childs, returned with the warrant of resurvey.

The defendant took five exceptions, the first four to refusals of the court to grant prayers tendered by him, and the fifth to one granted at the instance of the plaintiffs.

The first and second exceptions present questions under the act of 1839, ch. 34, the *first* asserting that the patent granted to the defendant for Ratler "is a positive bar by limitations," and the *second*, that if not a bar it is evidence of adverse possession by John Hoye, claiming title for twenty years prior to the date of the survey under which that patent was granted.

The act of 1839 is supplemental to that of 1818, ch. 90, entitled: "An act to quiet possessions and prevent suits at law." The counsel for the appellant insists, that they must be construed together, and that when so construed, the last must receive the construction put upon it by him, viz., that it applies to any lands, vacant or not, because the legislature must have intended to confer some right not granted by the former act. This would be a strong argument in a case in which it was clear that no other additional right was conferred but the one contended for on this appeal. But even then it might be well doubted whether the legislature did not exceed its authority in passing the act. The State may take private property for public purposes, but she has no more right to take one man's land and confer it upon another, than that other has to take it for himself without the assent of the owner. Does it need any argument to show that the State cannot any more than a citizen grant what she does not own? Cases of conflicting grants not unfrequently occur. The elder patent prevails over the junior for the simple reason, that the State, in granting the last, has undertaken to do what she could not accomplish—to pass a title to land that did not belong to her. So in escheat patents, the party claiming against the patent may show that the State had no title at the time of the grant, because the land was not liable to escheat.

But when construed together, the last act does give a remedy as to vacant lands not conferred by the first, and this we think is its true meaning.   Prior to 1839, and notwithstanding the right conferred by the act of 1818, a person in possession of vacant lands for more than twenty years was liable to be disturbed and put to expense at the suit of any person who might obtain a warrant for the same land, and to lose the land unless he could prove the possession required by that act, which, after the lapse of years, it might be difficult to do.   The act of 1839 enabled a party so situated to obtain a patent for the land without going through the forms and delays of the land office, and at less expense, and thus prevent any other person from obtaining a patent.   By this short process, he united the title with his previous possession, and acquired a right as against the State and all persons claiming by subsequent grant; whereas, under the former act his title depended on possession alone, and if he failed from any cause in proving this possession, his right to the land was gone when assailed by a party armed with a grant from the State.   This act gave to possessors of public lands this important advantage over those conferred by that of 1818.   But the act does not make the patent, when obtained, conclusive against all persons.   It merely authorises one to be issued on compliance with its provisions. The grantee takes it subject to the rights of other persons, and these are to be determined by the courts in like manner as other grants from the State.   In the absence of any thing in the act clothing this species of patent with an absolute and conclusive character, it should not be allowed such effect by construction, because there are many reasons why they should be governed by more stringent rules than grants obtained in the ordinary way.

The third exception presents the question of title by limitations, the defendant showing no title.   This leaves out of view all notice of the act of 1839, and we are now to consider the case as if that act and the proceedings under it had not been introduced.   It appears that John Swan's patent was granted in 1803, for eight hundred and eighty-eight acres, when that section of the State was in a wild and uncultivated condition,

which, it may be inferred from the record, has not much improved. The defendant claims thirteen hundred and seventy acres, the larger part of which is within the lines of the plaintiffs' grant, "Skipnish." It appears from the aforesaid affidavit of James Childs and the plats in the case, that John Hoye leased these thirteen hundred and seventy acres to James Childs, the father of the witness, about the year 1820, who took possession and soon after built a dwelling house and barn on a part of the land not within the lines of "Skipnish." In what this possession consisted we are not informed. The foundation of these houses were all that remained of them in 1851, when the warrant was executed. When they became dilapidated and what kind of possession was thenceforward continued does not appear.

Within two years after taking possession a fence enclosure was made of a few acres, one line of which remains, but no part of this enclosure is within the lines of "Skipnish." Within its lines, however, there is a portion of about ten or fifteen acres on which Childs cut rail timber and fire-wood, and probably some building timber; and the witness showed the stumps of six of these trees that he had cut more than twenty years before 1851. At a greater distance from the dwelling, and on "Skipnish," he showed the stump of a tree near an old tar-pit which had been cut down for boards. This tar-pit was burned by Childs thirty years before. The land near to and surrounding the tar-pit was then used by Childs. The whole of this land was run out by John Hoye at the time of the lease, and is the same that is now called "Ratler." Childs lived on the land as Hoye's tenant for seventeen years, and was succeeded by Summers. The witness also says, that during all this time Hoye had peaceable possession of the land and kept off all persons trespassing thereon, but he does not show the character of this possession. It does not appear that the plaintiffs, or those under whom they claim, ever had actual possession of any part of the land.

The counsel for the appellant concedes, that if the plaintiffs had actual possession of any portion of the land covered by their title, the defendant could not recover upon adverse pos-

session any thing beyond his actual enclosures, on the au-
thority of *Cheney vs. Ringgold*, 2 *H. & J.*, 87.  But he insists,
that the doctrine of mixed possession, as established in Mary-
land, does not apply to the present case, and that the defend-
ant is entitled to recover, on the authority of *Brooke vs.
Neale*, decided at December term 1829, and referred to by
the publisher of *Dorsey on Ejectment, at page* 40.  It is to be re-
gretted that the decision of such an important case, elaborately
argued as we are informed, should have passed *sub silentio*,
more especially as we are without the notes of the counsel,
or of the reporter, to show the points made at the trial.  It
would seem, from the view taken of that case, in the note to
*Dorsey's Ejectment*, 40, that, in the opinion of the annotator,
exclusive and unmixed possession for twenty years without
actual enclosures will, in all cases, give title to the defendant
and bar a recovery in ejectment.  But, after carefully examin-
ing the exceptions, we do not think that the doctrine of title
by possession has been carried to that extent.  The devisee
of the lands in controversy had conveyed them to the de-
fendant several years before he entered into holy orders, and
the defendant had entered and held possession under that title,
and was so possessed, when the grantor became a priest, at
which time, under the will of his father, the plaintiffs' title ac-
crued.  The defendant did not enter upon land not his own.
He was not a wrong-doer at the time of his entry, but he
held the title and possession under a party who had the right
to sell the land, though that title was liable to be defeated by
a subsequent event.  When that event happened the claimant
was ousted by deforcement, which is "a privation of the free-
hold, where the entry of the present tenant or possession was
originally lawful, but his detainer has now become unlawful,"
3 *Bl. Com.*, 172.  2 *Crabb's Law of Real Property, sec.* 2457.
When, therefore, this case is appealed to it must be considered
with reference to its facts, and not as applying the same princi-
ples, in behalf of an intruder, which had been recognized as a
valid defence when set up by one who had entered under a
title ; for this application of the decision would be to sup-

pose that the court had disregarded the obvious and important distinction, which the reported cases and elementary writers recognize between a possession taken by a wrong-doer and one taken by a person under title. It appears to be immaterial whether the title be valid or not, provided the entry and claim be *bona fide* under that title. Many of the cases are collected in 2 *Smiths' Lead. Cases*, 414, 415. As the result of these, we are told that there are two modes of possession which have that kind and degree of notoriety and distinctness, which are necessary to constitute statutory adverse possession. *First*, where one enters not under any deed or written title, but merely assuming the possession with claim of right; the ouster he effects extends no further than he occupies, cultivates, encloses, or otherwise excludes the owner from. *Second*, but if one enters under color of title, by deed or other written document, and occupies and improves the land, he acquires in law actual possession, to the extent of the boundaries contained in the writing, and this though the title conveyed to him by the deed be good for nothing. Upon these two principles, say the American annotators, the courts seem generally agreed, though in the different States they are explained and defined with various degrees of strictness. See also *Angel on Limitations*, 428, &c. *Casey vs. Inloes*, 1 *Gill*, 500. *Jackson vs. Camp*, 1 *Cowen*, 609.

It is not deemed necessary to refer to the cases in other courts, (they are numerous and some not easily reconciled with others.) because we think that the Court of Appeals of Maryland has not made any distinction between the case propounded by this prayer, and what is commonly understood to be one of mixed possession, that is to say, where a person having title to the whole is in actual possession of a part, and another without title is in actual possession of the other part, without enclosures. As against a wrong-doer claiming title by possession alone, the law is the same, whether the real owner be in actual possession of any part of the land or not.

The doctrines of adverse possession are treated of in *Casey vs. Inloes*, 1 *Gill*, 500, and the cases of *Davidson vs. Beatty*,

3 *H. & McH.*, 621. *Cheney vs. Ringgold*, 2 *H. & J.*, 87. *Hall vs. Gittings*, 2 *H. & J.*, 112, are there referred to, as establishing title by constructive possession where the real owner is in possession of part of his land. We do not understand the learned judge who pronounced that opinion to have confined the principles there stated to cases of actual mixed possession, but to have extended them to all where real estate is claimed by a wrong-doer, relying on possession alone against the real owner. The case then before him was not one of mixed possession. The property in dispute was covered by water at the time of which he speaks, and incapable of possession by either party. It is so stated in the opinion, (497.) If, as was contended, the judge was supposing a case of mixed possessions, such as that proved in *Cheney vs. Ringgold*, the cases referred to do not all apply to such a state of case. That in 3 *H. & McH.*, 621, lays down the doctrine, "that where a person claims by possession only, without showing any title, he must show an exclusive adverse possession by enclosure, and his claim cannot extend beyond his enclosures." This is not necessarily applicable to a case of mixed possession, although a previous clause of the opinion of the court, (quoted in 1 *Gill*, 500,) is so expressly applied. But that was not a case of mixed possession, for neither the plaintiff, nor the person under whom he claimed, had been in actual possession of any part of the land for many years before the suit was brought, but the whole was occupied by the defendants, relying on adverse possession. See page 624, where the facts are fully stated by Mr. Mason: also the opinion in 9 *Gill*, 275, 276. *Hall vs. Gittings*, 2 *Harr. & Johns.*, 112, was not a case of actual possession by the real owner of any part of the land during the time of the alleged adversary possession of the defendant. The question was, whether the commissioners appointed to preserve confiscated property by the act of 1780, ch. 49, were seized and possessed of confiscated lands without an actual entry, and the court held, that by operation of the act the commissioners were in possession, as agents of the State, from the time of its pas-

sage, "and although the defendant or those under whom he claimed continued in the actual possession of the land, it was the possession of the commissioners on behalf of the State, for where two persons are in possession, the one by right, and the other by wrong, it is the possession of him who has the right." The constructive possession of the commissioner ousted the actual possession of the wrong-doer.

The learned judge also refers to a case in 1 *Cowen,* 609, to show "that entry under claim of title is generally sufficient to constitute an adverse possession, and it is not material whether the title be valid or not. But if claim is not founded on a deed or writing, the possession is limited to actual occupancy and substantial enclosures, definite and notorious." Also to *Jackson vs. Schoonmaker,* 2 *Johns.,* 230, where it is said: "To make out an adverse possession in ejectment, the defendant must show a substantial enclosure, an actual occupancy, definite, positive and notorious." It does not appear that in these two cases the real owners were in possession of any part of the land; whether they were or not, the ruling of the courts is not placed on any such ground, but the doctrine is broadly stated, without any qualification whatever, and we suppose that the Court of Appeals, in deciding *Casey vs. Inloes,* so understood them. We are fortified in this view by the fact, that the case of *Potts vs. Gilbert,* 3 *Wash. C. C. Rep.,* 475, is also referred to as establishing the same doctrine, in which it appears that the actual owner had not been in possession for many years before the suit was commenced.

Independently of this recognition, by the Court of Appeals, of this distinction, shown, as we think, by the opinion to which we have referred, prepared by an eminent judge, himself high authority on all questions of ejectment law, there are other cases to the same effect. In *Cresap vs. Hutson,* 9 *Gill,* 273, the question was, whether the plaintiff could, pending the suit, convey the land in controversy of which the defendant had adverse possession? The counsel for the appellant insists, that that was a case where the plaintiff was in actual possession of part of the land, and was therefore seized of the whole,

and capable of executing the deed, and that the opinion of the court must be considered with reference to that state of facts. We do not find that the court placed their decision upon that supposed feature of the case. If it had been considered one of actual mixed possession, such as was before the court in 2 *H. & J.*, 87, it might have been disposed of upon the acknowledged principle, that actual possession of part, by the real owner, does give possession of the residue, and without the argument employed and the authorities cited, for the purpose of showing that the grantor, though not in the actual occupancy of any part of the land, was entitled to convey by force of the seisin with which he was clothed, by construction of law as the holder of the legal title. Besides, the cases referred to all go to this point, with one exception, (*Gittings vs. Hall*, 1 *H. & J.*, 14,) in which the grantor was possessed of part of the land at the time of his conveyance. We cannot suppose that the court, in declaring the principles of law applicable only to cases of mixed possessions, such as *Cheney vs. Ringgold*, invoked as authority decisions in which the possession was exclusively in a wrong-doer, a conclusion that cannot be avoided if the view of that case, suggested by the appellant's counsel, be correct. A reference to the cases will show that the doctrine announced in 9 *Gill*, is not to be confined to the case supposed by the counsel. We have before stated that in *Davidson vs. Beatty*, 3 *H. & McH.*, 594, the real owner of the land had not been in actual possession of any part of it for many years.

In *Ridgely vs. Ogle*, 4 *H. & McH.*, 123, the property was a large body of wood-land, unenclosed and unoccupied, except by the defendants, and those under whom they claimed. And so in the case of *Hammond vs. Warfield*, 2 *H. & J.*, 158, where it is said, "a naked possession (possession without right,) is only adversary to the extent of actual enclosures," the court were deciding upon the exclusive possession of the defendant.

In *Miller vs. Shaw*, 7 *Seargt. & Rawle.*, 129, there was evidence offered of a possession by the plaintiffs in answer to the

defence by possession, but the court do not put their decision on any such ground. The judges, in their opinions, all treat the subject as if wholly clear of such proof. Gibson, J., says, (139, 140:) "Where the owner resides on a part of the tract, although the danger of misapprehension may be less, the principles of law are precisely the same. The owner of unseated lands has a constructive possession which can be divested only by an actual possession, inconsistent with it, and where the owner is in actual possession of a part, he has no more than constructive possession of the rest." "As there is the same constructive possession of the part not actually occupied by either party, whether the owner reside on a part of the land or not, his being entirely out of actual possession is a circumstance that can have no operation against him." Duncan, J., uses the most clear and emphatic language, in addition to what is quoted in 9 *Gill,* 276, and after citing authorities from the States of Pennsylvania, New York, Connecticut, Massachusets, Maryland, Virginia, South Carolina, *Potts vs. Gilbert,* 3 *Wash. C. C. Rep.,* 475, several cases in the Supreme Court, *Adams on Ejectment* and *Runn. on Ejectment,* he says: "Against this uniform train of decisions of our own courts, the highest tribunals of justice in the several States, and of the Supreme Court of the United States, there cannot be found one solitary decision. It would be a harsh construction of a statute made for quieting possessions where the evidence of title might, from lapse of time, be out of the power of the possessor, and not for the encouragement of intrusion, to extend its protection beyond the actual possession where the entry is without colour of title. If this were not the law, a trespasser, by entering and cutting down a few logs for a cabin, would acquire the possession of many hundred acres." The difference between the cases, he says, is this, "where one enters under color of title, his possession is coextensive with his title, but where one enters without any colour of title, his seizin is confined to his actual possession," which, he says, must be by enclosure.

The cases in 2 *Johns.,* 230 and 2 *Gill & Johns.,* 173, do

not show that the owner was in possession of any part of the land. And in *Barr vs. Gratz*, 4 *Wheat.*, 213, the clear and broad principle is asserted, that when an entry is made without title, the disseisin is limited to actual occupancy, and that a patent for vacant land, by operation of law, vests the possession in the grantee, and that, consequently, so far as actual occupancy extended, did the statute run, and no further.

In 9 *Gill*, 276, it is said to be "a settled principle in the law apparently all the States, that title to lands from the commonwealth draws the seisin or actual legal possession to it; so that one who has title derived out of the State, is, by force of his title, in possession until an ouster or disseisin is committed by some one entering upon the land with a claim of possession adversely to him," for which reference is made to 2 *Smith's Lead. Cases*, 413.

The opinion of Washington, J., in *Potts vs. Gilbert*, (3 *Wash. C. C. Rep.*, 475,) is often referred to, and by the Court of Appeals, in 1 *Gill*, 501. The facts of that case are free from doubt, and nothing can be plainer than the terms in which the rules of law on this subject are there stated. The plaintiff had made no entry on the land since 1788 : the alleged adverse possession commenced in 1793, and had continued for more than twenty-one years. The only defence seriously relied upon was the act of limitations, and the judgment was pronounced on that state of case, (477.) The court said : "In the construction of the statute it has always been held, that the actual entry of the owner is not necessary to prevent the operation of the law, unless an actual adverse possession is taken by a stranger, from which time, and not before, the limitation begins to run." And after stating that the grant of land passes at once the legal possession to the grantee, he says : "The adverse possession, before mentioned, must not only continue, but it must continue the same in point of locality, during the prescribed period of time, sufficient to constitute it a bar; that is to say, a roving possession from one part of a tract of land to another, cannot bar the right of entry of the owner upon any part of the land which had not

been held adversely for twenty-one years, although the different periods of possession of the separate parcels should amount in the whole to that number of years. For it is a clear principle of law, that the right acquired by the adverse possession of a disseisor, or of one who enters or retains possession by wrong, can never extend beyond the limits of the particular spot to which his occupation is confined. If he could go beyond these limits there would be no other to circumscribe his claim. He cannot resort to the metes and bounds of the tract upon which he has settled, because the legal possession of the owner continues unaffected by the tortious entry, except so far as the actual adverse possession has disturbed it. The legal owner is constructively in possession of the whole tract, because his title extends to the whole; a wrong-doer can claim nothing in relation to his possession by construction." See also *Jackson vs. Woodruff*, 1 *Cowen*, 285. If, by force of the deed, the legal possession passes with the title, and the wrong-doer can claim nothing by construction beyond his actual occupation, is there any reason, as far as the wrong-doer is concerned, for a distinction between those cases in which the real owner is in possession of part of his land, and those in which he is not? In both the land equally belongs to the holder of the title. The acts of the party in possession and his want of title may be the same in both, as to all the unenclosed land, and yet, as we are told in argument, the law, which is said to be "the perfection of reason," declares that a mere *possessio pedis*, by the owner of a remote corner of his land, will, in that case, protect his entire title, whilst in the other, because he is not actually on any part of the soil, the whole will be lost to him, by the acts of a mere trespasser. If there be any such difference it should not be recognized, for the reasons so forcibly stated by Judge Gibson, in 7 *Seargt. & Rawle.*, 137 *to* 141, especially as we have not been furnished with a single decision in its support.

What constitutes, in a case like the present, such an adverse possession in a trespasser as will turn the real owner out of possession, is a different question. In some of the

cases actual enclosure has been held to be indispensable, whilst in others it has been decided according to the nature and situation of the property.   But it is immaterial how it has been settled elsewhere, as we have the authority of the Court of Appeals, in 9 *Gill*, 277, for saying that it was *res adjudicata* here as long ago as 1797, when *Davidson vs. Beatly*, was decided, according to which such title does not extend beyond actual enclosures.

We acknowledge the force of the argument, that titles depending upon long continued and uninterrupted possession, rest upon plain principles of reason and policy, and that disputes in regard to titles and boundaries should not be encouraged or revived after the lapse of many years.   This is the principle on which courts generally act in these cases.  In Maryland the doctrine is fully recognized.   But we must remember that whilst presumptions are not made in favor of a *tort feasor*, they are very often made in behalf of the real owner as against one having no title.   These titles by limitation, however, when established must prevail; and hence, when a party enters upon land which he knows does not belong to him, with intent to make it his own by possession alone, and without compensation to him who has acquired the title by purchase, or in some other legal mode, there is nothing unreasonable in prescribing to him the most rigid rules, and in exacting from him a compliance with all the requirements of the law, whatever they may be.   If by these means he succeeds in retaining what he has actually grasped, he secures to himself what public policy, not justice, allows, and should be satisfied with his gains.

According to these principles, there not being sufficient evidence to sustain the third and fourth prayers offered by the defendant below, they were properly refused.

The fifth prayer was offered by the plaintiffs and granted by the court. If, as the record shows, John Hoye had no title to the land in dispute, and was a wrong-doer at the time of his entry, it is manifest that he could pass no title to the defendant except that acquired by possession, which we have

seen it was insufficient to confer. The only alleged privity between them is by the assignment of the certificate for "Ratler," which can have no such effect after the view we have taken of the act of 1839, ch. 34. The prayer is, that the defendant, for the purpose of making out title by possession cannot avail himself of the possession of John Hoye. We have seen that John Hoye had no such adverse possession as was necessary to give him title by such means. It necessarily follows, that if the defendant had no other title than by possession of the same land, in the same manner as it had been held by his predecessor, the imperfect possession of the latter could not, when united to his own, make it adverse, continuous and exclusive, as against the real owner.

We agree with the court below on all the exceptions, and affirm the judgment.

*Judgment affirmed.*