# HORATIO G. ARMSTRONG *vs.* THOS. C. RISTEAU'S Lessee.

Twenty years adverse possession of land will enable a *plaintiff* to maintain ejectment against a defendant having the *paper title* who has ousted him.

Possession for twenty years, by force of the statute of *James* 1, *ch.* 16, is like a descent at common law, and tolls the entry of the person having right, and though the very right be in the defendant, yet he cannot justify his ejecting the plaintiff.

In the case of *Doe vs. Reade*, 8 *East*, 353, the plaintiff did not have twenty years adverse possession before the entry of the defendant having the legal title, and therefore does not sustain the position for which it is cited in 2 *Archbold's Nisi Prius*, 318.

The common opinion among eminent jurists, whose learning and experience were often employed in ejectment causes in this State, may be appealed to as evidence of what the law was then considered to be on a point upon which there are no adjudged cases to the contrary.

In cases of *mixed possession* actual *enclosure* is necessary to defeat the title of the real owner, and as between him and a *wrong-doer* it makes no differ-

ence whether he is in actual possession of any part of the land or not, for in either case the title by possession prevails only to the extent of actual enclosure.

Possession of part by him who has title to the whole is possession of the whole, and he cannot be barred by adding together the different possessions and acts of the defendant at long intervals so as to make out twenty years.

Where different persons enter in succession without title, the last cannot tack the possessions of his predecessors to his own so as to make out continuity of possession sufficient to bar the entry of the owner, for the moment the first quits, the legal possession of the owner is restored, and the entry of the next occupant constitutes him a new disseizor.

Parol admissions of one, under whom the defendant claims, that the land belonged to the plaintiff, and that he and the plaintiff had planted a boundary and agreed upon a line of division between them, may be evidence of boundary, location and possession, but not to prove *title* in the plaintiff *by possession* when he has admitted that defendant's *deed* embraces the land in dispute.

Where the beginnings of the two first lines of a tract of land are admitted by the locations of both parties on the plats, the jury are concluded thereby, and when the two first lines of the defendant's deed run with the lines whose beginnings are thus admitted, the jury must find the beginning of his *third* line as located by the defendant.

Fences upon *three sides only* of an oblong or square piece of land are not a sufficient enclosure to make an adverse possession, so as to vest title in a wrong-doer as against the real owner, though such fences *exclude* the latter from the use and enjoyment of the land.

One of the elements of title by adverse possession is that it must be a *hostile* invasion of another's rights; if there be consent on the part of the owner the entry for the purpose of doing the act is not tortious.

To authorise the presumption of a deed the possession must be actual, adverse, exclusive and continuous, and under claim of title, and if the prayer does not leave the finding of these facts to the jury it is erroneous.

Where an object is located on the plats and known to the witness, he may give evidence of any cutting on, or user or cultivation of, the land in any particular direction from such object, without any location of the places where such cutting was done.

A witness sworn on the survey may give evidence of the general possession of the land located on the plats, and of acts of ownership generally over the same, without any particular location of the places where the acts of ownership were performed.

APPEAL from Baltimore County Court.

*Ejectment* by the appellee against the appellant for part of a tract of land called "Darnallsylvania." Plea, *non cul.*, and defence on warrant. The whole tract belonged many years ago to Hercules Courtenay, and as both parties claimed under

him, it was agreed to dispense with the location of any earlier title than his. The following sketch, taken from the plats in the case and explanations thereof, will sufficiently illustrate the location of the land and explain the references thereto in the opinion of this court:

Land of Ridgely's Heirs.

*Explanations of the aforegoing Plat.*

1. The outer lines of the aforegoing enclose the whole tract called "Darnallsylvania."

2. The lines of the land in dispute begin at 10 and run thence to B, called "black B," near which is the cherry tree spoken of in the plaintiff's first prayer; thence to E, called "black E;" thence to *c*, called "red C;" thence to *b*, called "red B;" thence to 9, and thence to the beginning.

3. D is the point admitted to be the beginning of the *first* line of "Darnallsylvania."

4. G, called "black G," indicates a "stone and hickory," admitted to be the beginning of the *second* line of "Darnallsylvania."

5. *a*, called "red A," is the end of the second and beginning of the *third* line of Armstrong's title deed.

6. A, called "black A," is the point at which, (as the witnesses say,) Risteau and H. W. Chambers planted a stone, as the boundary of their lands and as the beginning of the division line between them.

7. The fences spoken of by the witnesses run from A to B, from B to C, and from 9 to 10, at which latter point is a gate, called by the witnesses "Armstrong's gate," through which the road leading into and terminating upon Armstrong's land passes.

8. There is no fence from 9 to *b* on the south side of the land in dispute, on which side it adjoins other wood-land in the possession of Risteau, which latter is not entirely enclosed, being open on the line between it and that of Ridgely's heirs.

*Exception.* After the testimony (which, both written and oral, is sufficiently stated in the opinion of this court,) had been offered, the plaintiff asked three instructions to the jury, in substance as follows:

1st. If they shall believe that the plaintiff, and those under whom he claims, have had exclusive and continuous possession of the land in controversy for a period of twenty years and upwards prior to the institution of this suit, and that he and they, during all that time, exercised their rights of property over said land openly, and with the knowledge and consent of the adjoining proprietors, under whom the defendant claims, and

that the said adjoining proprietors always recognized the fence spoken of by the witnesses, and cornering at the cherry tree, as a division fence between them and those under whom the plaintiff claims; and if they shall also believe that H. W. Chambers, under whom the defendant claims, and when owner of the adjoining land, did, together with the present plaintiff, plant a stone at black A, on the second line of "Darnallsylvania," as the beginning of the divisional line between the parts of "Darnallsylvania" respectively owned by him and the plaintiff, then the plaintiff is entitled to recover.

2nd. If they shall believe that the plaintiff and those under whom he claims have had exclusive, adverse and continuous possession of the land in controversy for twenty years and upwards prior to the institution of this suit, then he is entitled to recover.

3rd. This prayer, after submitting to the jury the finding of the facts stated in the first, asserts, that then they are bound to presume a deed for the land in controversy to have been executed to the plaintiff, or those under whom he claims, by the adjoining proprietors, under whom the defendant claims.

The defendant also asked three instructions, substantially as follows:

1st. If the jury find the several deeds and wills given in evidence by the defendant, and that they are truly located, and that according to the courses and distances of said title, and agreeably to the beginning of "Darnallsylvania," as laid down on the plats and admitted by both parties, the second line of the defendant's land begins at black G on the plats, and runs thence to red A, and that the third line thereof runs to red B, and the fourth to red C, then the defendant is entitled to the land for which he has taken defence and the plaintiff is not entitled to recover.

2nd. This prayer objects to the admissibility of all the evidence offered by the plaintiff in regard to the acts of the plaintiff and others, under whom he claims, in cutting wood upon the land in dispute, inasmuch as the places of said cuttings are not located on the plats; nor does it appear that they were

pointed out by the witnesses examined in this case to the surveyor at the time of the survey.

3rd. If they find the facts set forth in his first prayer; and further, that defendant and those under whom he claims have been in the quiet and peaceable possession and actual occupancy, by cultivation and residence, of all that part of the land embraced within his deed to the north and east of the fence, designated on the plat as running from black A, in the second line of "Darnallsylvania," and thence south-east to black B, and thence to C; and that the land claimed by the plaintiff, within the lines of the defendant's deed, was and is not now enclosed, but is entirely open and unenclosed on the east side of the road to defendant's land, as laid down on the plats, which has been used by him and those under whom he claims, and which terminates upon his property; and further, that the land so claimed by the plaintiff is also open and unenclosed upon the south side thereof, then no acts of *sparsim* cutting, as given in evidence by the plaintiff, constitute such an exclusive possession, no matter from what continuance of time, as will enable him to recover in this action.

The court, (FRICK, C. J., and LE GRAND, A. J.,) granted all the prayers of the plaintiff and rejected all those of the defendant, and to this ruling the latter excepted, and the verdict and judgment being against him he appealed.

The cause was argued before ECCLESTON, MASON and TUCK, J., first at December term, 1852, and afterwards, by order of the court, was re-argued at the present term.

*Charles F. Mayer* and *Grafton L. Dulany* for the appellant.

Both parties claim under Hercules Courtenay. The defendant's deed gives him a clear and perfect title to all the land embraced in it, and it is admitted that its true location embraces the land in controversy. The plaintiff relies upon *possession alone.* Two questions arise upon the plaintiff's prayers, and the first and third prayer of the defendant:—1st. Will an adverse and continuous possession for more than twenty years enable a party, relying upon such *possession*

·*alone* for his title, to maintain, as *plaintiff*, ejectment against the *true owner* who has ousted him and gained quiet and peaceable possession of the land? 2nd. If the first proposition should be decided in the affirmative, is the possession of the plaintiff in this case of such a character as will enable him to maintain the action?

1st. It is a rule of strict observance in this State, that a party who brings ejectment must show a legal title and right to the land itself, and that he must have this title against all the world. The act of limitations quiets the possession of the party who is in possession and acting on the *defensive;* and though twenty years continuous adverse possession might enable the possessor to recover against a wrong-doer who has ejected him, yet there is no Maryland case which has decided that he can maintain the action against the *true owner.* The reason for this is obvious, for the entry of the true owner where the possession becomes vacant is not *a trespass;* when he once gets possession his title sanctifies his *seizin;* he is then in as of his old right. In 2 *Archbold's Nisi Prius,* 318, it is said, "if a party against whom the twenty years have run obtain quiet possession of the land, he is then in as of *his old right,* and may set up his right and title as a *defence* to any ejectment that may be brought against him, in the same manner as if he had never been out of possession." 8 *East,* 353, *Doe vs. Reade.* 2 *Seargt. & Rawle,* 57. It is not necessary for the true owner to show that he has been in possession at some time during twenty-one years before suit, (6 *Seargt. & Rawle,* 21, *Hawk vs. Senseman;* 1 *Munf.,* 162, *Clay vs. White,)* for the title confers the *seizin,* and though the seizin be divorced from the title the latter still remains, and when the true owner gets the possession he is in of his old right, even though he obtains possession by *disseizin.* In the case cited from *L'd Raymond,* 741, it is not said the plaintiff was acting against the party having the true title; nor is it said in *Dorsey on Ejectment,* 31, 43, that such an action can be brought against the true owner. No such case has ever occurred in this State, and we rely upon the reasoning of the authority in

*Archbold's Nisi Prius,* before cited, that such an action can-not be sustained.

2nd. But suppose it be conceded that he can maintain the action, is the plaintiff's possession in this case of such a *character* as will transfer the title to him?    Where possession alone is relied upon to confer title it must be:—1st, definite; 2nd, for twenty years; 3rd, it must be uninterrupted during the twenty years; 4th, it must be an *enclosed* possession, and 5th, it must be *adverse* in its origin.    If any of these requi-sites are wanting it is not sufficient.    So far as *enclosure* is essential to such a possession, the case of *Casey vs. Inloes,* 1 *Gill,* 499, 500, is conclusive.    See also 3 *Wend.,* 337, *Jackson vs. French.*    The land here is wood-land and is *unenclosed* upon two sides at least.    Now what is meant by enclosure?  it means to shut in on *all sides,* to *surround.*    But it is said the fence spoken of by the witnesses *excludes* us and is, so far as we are concerned, an enclosure.    Now this fence stood there when our deed was executed, and is therefore our fence, being upon our land, and the land in dispute therefore only lies *out of our* enclosure, and can it be said that because we do not choose to enclose all our land we therefore exclude ourselves, by our own acts, from the part unenclosed, and thereby lose our title to it?    We were in possession of the rest of the land embraced in our deed by actual enclosure, and our possession was extended by construction to the limits of our title.    Our possession of part with title is possession of the whole.    3 *H. & McH.,* 621, *Davidson's Lessee, vs. Beatty.*    It was therefore a case of *mixed possession,* and in such a case, where two are in possession of land, it is his possession who has the right, unless he be deprived of it by *actual enclosure* for twenty years.    9 *Gill,* 277, *Cresap's Lessee, vs. Hutson.*    1 *Gill,* 500, *Casey vs. Inloes,* and cases there cited.    The defendant being thus in constructive pos-session of the whole, the acts of the plaintiff in entering and cutting wood from time to time, without actual enclosure, were but *repeated trespasses.*    He might have continued thus to enter and depart for a thousand years and still have gained

no title, for the moment the intruder's foot was removed from the land the possession of the true owner was restored, and every fresh entry and every fresh cutting was a distinct trespass. See 2 *H. & J.*, 94, *Cheney vs. Ringgold; Do.*, 122, *Hall vs. Gittings;* 4 *H. & McH.*, 129, *Ridgely v·. Ogle;* 5 *H. & J.*, 264, *Hammond vs. Ridgely;* 2 *H. & McH.*, 260, *Lloyd vs. Gordon and Wife;* 1 *H. & J.*, 545, *Gibson vs. Martin;* 2 *Johns.*, 231, *Johnson vs. Schoonmaker*, besides the cases already cited in 1 *Gill* and 9 *Gill.* But again, the possession, such as it is, was not adverse in its origin; it began, if at all, by mutual error, and mistake is never the source of right. 6 *H. & J.*, 500, *Lamott vs. Bowly.* 15 *Wend.*, 597, *Sharp vs. Brandow.* Where a party comes into possession under the permission of the rightful owner, he cannot turn it into an adverse possession. 3 *Wash. C. C. Rep.*, 475, *Potts vs. Gilbert.* We admit that Chambers was under the impression that the land in dispute belonged to the plaintiff, down to the time when the defendant had an actual survey made. The boundary fence was esteemed such by mistake; neither party thought when it was placed there that he was yielding any thing within his title, or gaining any thing beyond it. But the declarations of Chambers are not admissible to prove the *fact* of possession; they may prove its *character* as that it was adversary, but not the *fact* of possession, which must be made out by other and independent proof applicable to the subject. But these declarations were introduced to show *title* in the plaintiff, and for this purpose they are of no value. The pleadings and admissions on the record show that the *legal title* was in the defendant, and parol proof to contradict this is inadmissible; a disclaimer is inadmissible to prove title. See on this point 5 *Cowen*, 133, *Jackson vs. Davis.* 7 *Johns.*, 186, *Jackson vs. Vosburgh.* 10 *Do.*, 358, *Smith vs. Lorillard.* 16 *Do.*, 302, *Jackson vs. Cary.* 1 *H. & McH.*, 262. *Drane vs. Hodges. Adams on Eject.*, 275. *Act of* 1786, *ch.* 33, *sec.* 6. The dispute here is in fact about boundaries and not about title, and the statute of limitations does not run in such cases, not extending thereto. 1 *H. & McH.*, 84, *Miller vs. Hynson.* 2 *H. & J.*, 122, *Hall vs. Gittings.*

3rd. Our third prayer was erroneously rejected, because the places of *sparsim* cutting not being located, any evidence in regard thereto was inadmissible. 1 *Gill*, 502, *Casey vs. Inloes.* 2 *H. & J.*, 122, *Hall vs. Gittings.* But if it be not necessary that each particular place of cutting should be located, we yet insist that the limits within which they took place should be.

*J. M. Campbell* and *John Nelson* for the appellee.

The two main questions in the case are:—1st, whether twenty years adverse possession will enable a plaintiff to maintain ejectment against a defendant having the *paper title*, who has ousted the plaintiff? and 2nd, whether the plaintiff has proved such a possession as entitles him to recover in this action? We maintain the affirmative of both these propositions.

1st. In *Casey vs. Inloes*, 1 *Gill*, 504, the court say, that "nothing short of an actual adverse and continuous possession for twenty years can vest a title in the wrong-doer." This language clearly shows that such possession is competent, not only to divest title from the original owner but to vest it in the possessor. That such is the effect of the statute of limitations of 21*st James* 1, *ch.* 16, is settled in England. In 1 *Lord Raymond*, 741, it was ruled by *Lord Holt*, that "if A has possession of land for twenty years uninterrupted, and then B gains possession, upon which A brings ejectment, though A *is plaintiff* his possession for twenty years will be a good title for him, as well as if A had been then in possession, *because possession for twenty years now, by virtue of the statute of* 21 *James* 1, *is like a descent at common law, which tolls the entry*." The same position is laid down in *Dorsey on Eject.*, 43, which cites and relies upon the case in *Lord Raymond;* and in 4 *H. & McH.*, 72, *Plummer vs. Lane*, it is said, *the plaintiff* may trace his title by twenty years uninterrupted and exclusive possession. There is no contrary doctrine to be found anywhere. Why should not this be the law? Risteau has been in adverse possession for twenty

years; the clear effect of this is that Armstrong could bring no action against him. Why? because he has by lapse of time lost his title, and therefore stands in the same relation to the land that a stranger would, and none other; his right of entry is gone as if by a *descent cast*, and in case of a *descent cast* the title is perfect for every purpose—the entry is *tolled.* It would be strange if he could by mere physical force turn out the true owner, and yet could not as *plaintiff* maintain an ejectment. Such a principle has never received the sanction of a court of *justice.*

2nd. Now what are the essential requisites of such a pos-session? It must be *actual, continuous* and *adverse.* The evidence shows *actual* and continuous possession by Risteau and those under whom he claims, up to the *division fence,* for more than *fifty* years; they were in the constant habit of cutting wood and exercising acts of ownership over the land in controversy from 1807 down to the time of the present suit. There is no question of *mixed possession* here; the evidence is uniform on the point that this fence was the *division line* and has been so for thirty years. The case of mixed possession are where two are in possession, and that of the one having no title is excluded and that of the one having the deed is adjudged to be exclusive, but here the *undisputed* possession has been in Risteau and those under whom he claims; there never has been a possession by Armstrong, and the question then turns upon the point whether this *admittedly exclusive* possession was *adversary?* An adversary posses-sion is a possession *inconsistent* with the true owner's right, (*Dorsey on Eject.*, 35,) or a claim of title *hostile* to that of the true owner. This possession, tested by either of these definitions, is adverse. The cutting of timber was *inconsistent* with the rights of the other party, for it was destructive of his estate. Enclosure does not constitute *title; it is* but evidence of the claim of title, and is not essential to make an adverse possession. The Court of Appeals, in 1 *Gill,* 500, have said, "*actual, adverse* and continuous possession for twenty years" will vest title in the wrong-doer; they have

not said it must be *by enclosure.* In *Brooke vs. Neale,* cited in the note to *Dorsey on Eject.,* 41, it was decided, that adversary possession alone *without enclosures,* where it is not a case of mixed possession, will give title after twenty years. But we have an *actual enclosure* so far as Armstrong is concerned, for he can only get *on* this land by getting *over* the *division fence.* The testimony clearly shows that this fence was established as a *division line.* This fence was notice that the party who put it up intended to *keep off those on the other side.* It was *recognised* as a *boundary fence* from the earliest times.

3rd. Upon the finding of the facts submitted in our third prayer, there was the *presumption* of a conveyance. This position is unequivocally laid down in *Casey vs. Inloes,* 1 *Gill,* 505. The possession has continued from 1807, and at that time the line stood precisely where it does now. Hearsay is evidence as to boundary and the character of holding. We admit that a party cannot by *parol* disclaim title, but the rule is not applicable to questions of boundary, and there can be no higher evidence than the declarations of the parties as to where a particular line ran. See 6 *Johns.,* 19, *Jackson vs. Shearman;* 7 *Johns.,* 176, *Ballou vs. Kip,* and 2 *H. & J.,* 112, *Hall vs. Gittings.* But the evidence not only shows acquiescence, but an actual *contract* that this should be the division line, and the case of *Smith vs. McAllister,* 14 *Barbour,* 434, is therefore perfectly conclusive of the whole question. There could have been no mistake here, as in the case of *Cresap vs. Hutson,* 9 *Gill,* for the line was ascertained as a boundary as early as 1798. But suppose there was such mistake, a *tortious* holding after twenty years will give title, *a fortiori,* will an *erroneous* holding have the same effect?

4th. It was not necessary to locate every tree cut. After locating the fence, evidence of cutting on either side of that fence may be given without locating the points of cutting on the plats. General possession of the whole tract, and acts of ownership generally over the same, without any particular location of the places, may be given in evidence. *Bowley vs. Deady, Dorsey on Eject.,* 62. See also 4 *H. & McH.,* 128,

*Ridgely vs. Ogle, note (a.)*   2 H. & J., 87, *Cheney vs. Ring-gold,* and *McHenry on Eject.,* 216.

TUCK, J., delivered the opinion of this court.

The appellee sued the appellant for the recovery of part of a tract of land called "Darnallsylvania." At one time this whole tract belonged to Hercules Courtenay, who was the father of the appellee's wife, and who, in the year 1807, sold three hundred and thirty-one acres thereof to Daniel Chambers, under whom the appellant claims, by a devise to his son, Harry W. Chambers, and subsequent conveyances.

At the trial below, the appellee offered the will of Hercules Courtenay and other documentary evidence, from which it appears that he devised his "dwelling plantation, consisting of parts of Good Hope, Gray's Inspection and 'Darnallsylvania,'" to his wife for life, and at her death to his son, John S. Courtenay.   In 1820 the latter conveyed his interest to his mother, who, by her will, dated in 1824, and proved in 1826, directed the lands to be sold and the proceeds to be divided between her said son and Mrs. Risteau.   It does not appear that any sale was made under the will, nor in what manner J. S. Courtenay became sole owner of the dwelling plantation of his father; but in 1827 he devised it to Mrs. Risteau and her infant son, and to the survivor, and the heirs and assigns of such survivor.   The land in controversy is not mentioned in any of these instruments offered on the part of the appellee.   It does not appear that Mrs. Risteau was the owner of the whole of her father's estate at the time this action was commenced.

The plaintiff proved various acts of ownership on the part of H. Courtenay, his widow and himself, by cutting wood, timber and rails, for thirty or forty years before the trial; and that certain fences on the north and east of the land in dispute were standing at the time of the trial, where they were *forty* years before, which were considered the division fences between these farms; that Chambers, the elder, had several times said that the land in dispute belonged to Mr. Courtenay, and that about the year 1832, H. W. Chambers, from whom the defendant purchased, and the appellee had planted a stone at

the beginning of one of the lines, located by the appellee, as a dividing line between them. There is no proof of possession by John S. Courtenay, nor of the circumstances and manner of the appellee's taking possession of the disputed land. It is wood-land and has fences on three sides, but has none on the south; on that side it adjoins wood-land of the Courtenay estate in possession of the appellee, but this is not entirely enclosed, being open on the line between it and the lands of Ridgely's heirs. The *locus in quo,* part of the Courtenay estate, and Ridgely's land, constitute a considerable body of land, uncultivated and not enclosed, and have so remained for many years. A road passes through the land from the south to the north, leading into Armstrong's possessions through a gate in the fence, laid down by the appellee as the dividing line between the parties. By whom this gate was put there does not appear, but the witnesses speak of it as Armstrong's gate.

On the part of the defendant below it was proved, that Courtenay sold and conveyed to Chambers, the elder, in 1807, three hundred and thirty-one acres, which are included in the deed to the appellant, the lines of which embrace the lot in controversy, if located according to his pretensions. He also proved that he and those under whom he claims have, from the time of Daniel Chambers, the grantee of Courtenay, resided on, occupied, used and cultivated, all the land within the limits of the defendant's deed, except that portion thereof which is claimed by the plaintiff.

After having been in the possession of the appellee, and of those under whom he claims, adversely for more than twenty years, as he alleges, the appellant obtained possession by extending his fences according to the lines of his deed, as he claims they should be located. Various locations were made, most of which are disputed by counter-locations, but the explanations of the surveyor show that the parties agree as to the beginning, and first and second lines of the whole tract of "Darnallsylvania."

No question arises on paper title. The prayers of the appellee rest his right to recover on adverse possession by him-

self and those under whom he claims. And two propositions have been relied on by the appellee's counsel, which are supposed to embrace the points chiefly in controversy. These are: *First.* That twenty years adverse possession will enable a plaintiff to maintain ejectment against a defendant having the paper title, who has ousted the plaintiff. *Second.* That the plaintiff below has proved such a possession as entitles him to recover in this action.

If the first of these propositions were to be settled according to the English authorities alone, we suppose that its correctness could scarcely be questioned. More than a century and a half ago it was decided by Lord Holt, that "if A has possession of land for more than twenty years uninterrupted, and then B gains possession, upon which A brings ejectment, though A is plaintiff, yet his possession for twenty years will be a good title for him as well as if A had then been in possession, because possession for twenty years, by virtue of the statute of *James* 1, *ch.* 16, is like a descent at common law, which tolls the entry." *Stocker vs. Berny,* 1 *Lord Raymond,* 741, (reported in 2 *Salk.,* 421, as *Stokes vs. Berry.*) The same principle is stated in *Buller's N. P.,* 103, and the reason assigned, "that by the statute, twenty years possession tolls the entry of the person having right, and consequently, though the very right be in the defendant, yet he cannot justify his ejecting the plaintiff."

In *Taylor vs. Horde,* 1 *Burr.,* 60, Lord Mansfield, in speaking of adverse possession by a defendant in ejectment, said: "Twenty years adverse possession is a positive title in the defendant; it is not a bar to the action or remedy of the plaintiff only, but it takes away his right of possession." And subsequently, in the case of *Denn vs. Barnard, Cowper,* 597, this eminent jurist applied the same doctrine where the plaintiff in ejectment was relying on a title by possession alone. See also *Barwick vs. Thompson,* 7 *Term Rep.,* 492.

The counsel for the appellant, however, contend that this doctrine does not prevail against a defendant holding the legal title, and they rely on 2 *Archbold N. P.,* 318, (50 *Law Lib.,* 308,) where it is said, "if a party against whom the twenty years have run obtain quiet possession of the land, he

is then in as of his old right, and may set up his right and title as a defence to any ejectment that may be brought against him, in the same manner as if he had never been out of possession," for which the author cites *Doe vs. Reade*, 8 *East*, 353. That case does not sustain this position. There the plaintiff never had had any possession of the premises. She set up a claim under a former possessor, between whom and herself there was no privity. The defendant, with title, had entered into a vacant possession on the death of the last occupant. "The court all agreed, that the defendant being lawfully in possession might defend himself upon his title, though twenty years had run against him before he took possession, *such possession not being the possession of the lessor of the plaintiff.*" The words last quoted, but omitted by Archbold, clearly show that the defendant could not have resisted the title of the plaintiff, if she had had twenty years adverse possession before the entry of the defendant. There are other cases in England in which the decision of Lord Holt is referred to as authority on this point.

We have not been referred to any decision in Maryland in which a plaintiff has recovered on such a title, but there are several cases in which the court, in stating the general doctrines of the law of ejectment, has assumed that an adversary possession for more than twenty years is a positive title, on which a plaintiff may recover. And in the arguments of counsel in the numerous land cases to be found in our reports, there are frequent recognitions of the validity of such titles when relied on by plaintiffs. We mention this as pertinent to the present inquiry, because, in the absence of adjudged cases, the common opinion among eminent jurists, whose learning and experience were so often employed in ejectment causes, under the Provincial and State governments, may, we think, be appealed to as evidence of what the law was then considered to be, on a point upon which there are no cases to the contrary. *Ram on Legal Judgments*, 12. 1 *Taunt.*, 448. 8 *Gill*, 500.

In the case of *Plummer vs. Lane*, 4 *H. & McH.*, 72, the

court said, "the plaintiff in ejectment must show a grant of the land for which the action is brought, and a regular title from the grantee; or seizin of the land, and a dying seized of the person under whom the lessor derives his title, and a regular title from the person dying seized, *or twenty years uninterrupted and exclusive possession of the land.*" And in the case of *Wood vs. Grundy*, 3 *H. & J.*, 19, the court were of opinion that the plaintiff was not entitled to recover, "there being no title deduced from the patentee, &c., and there being no possession proved sufficient to entitle the plaintiff to recover in ejectment *without showing title.*" See also *Hutchins vs. Erickson*, 1 *H. & McH.*, 339. *Helms vs. Howard*, 2 *H. & McH.*, 88, 89. 3 *Do.*, 621. This view of the question is also taken by the late Judge Dorsey, in his lectures on ejectment, (page 43,) where he says, "twenty years adversary possession not only tolls the right of entry, but enables the party in possession to maintain ejectment," and, "where the claimant does not come within the exceptions of the statute of *James*, it (the adverse possession) is a bar against all the world;" for which he refers to the case above cited from Lord Raymond, showing that Lord Holt's construction of the statute was understood by him to be the law in this State. See same book, pages 56, 57.

With these opinions before us we might rest the decision of the proposition under consideration, upon the authority of those by whom the law has been thus expounded, more especially as the labor and research of counsel (and of the court) have not produced a single case in which the opposite doctrine has been maintained. 2 *Gill*, 201. But, as the counsel for the appellant contend that the statute was designed for the protection of defendants, and to quiet possessions so long only as they are held; and as this is the first case in this court in which the point has been directly presented, its importance is a sufficient reason for briefly alluding to what has been ruled elsewhere, in courts of high authority. Looking to the reason on which the law of limitations is applied, we cannot give to the statute the restricted operation

Armstrong *vs.* Risteau's Lessee.

suggested by the counsel. It is true that it does protect possessions against plaintiffs showing title, but this effect is produced, because what the law deems a perfect possession, has continued during the whole time prescribed by the statute, and thus given the title to the party who is so possessed. A presumption arises that the rights of the real owners have been extinguished or surrendered, else they would not have acquiesced so long in the possession and use of the property. The right of entry is thereby taken away, and the right to the possession attaches to the possession itself, making a complete title in the occupant. 11 *Gill & Johns.*, 371. 1 *Gill*, 497. *Angel on Limitations*, 396. The argument of the appellant is fully met by the following cases, in which the question was expressly before the court.

In Pennsylvania, whose statute of limitations, according to Judge Washington, (3 *Wash. C. C. Rep.*, 478,) is substantially the same as that of 21 *James*, Tilghman, C. J., held, that the right of possession is acquired by twenty-one years possession, and that this right is not only sufficient to support a defence, but is a positive title, under which one may recover as plaintiff in ejectment. "This," he said, "was the very point decided in *Stokes vs. Berry*, 2 *Salk.*, 421." So in New York, it is said to be "unquestionably the true rule, and every legal presumption, every consideration of policy requires, that such evidence of right should be taken to be conclusive." *Jackson vs. Dieffendorf*, 3 *Johns.*, 267. In that case a party who had held possession for thirty-eight years, was turned out by a writ of possession under a judgment by default at suit of the defendants, who were plaintiffs in a former action. The questions were, whether that possession gave title to recover in ejectment, and whether the judgment by default in the former suit was a bar to the action. Both points were ruled with the plaintiff. The same doctrine was affirmed in *Jackson vs. Oltz*, 8 *Wend.*, 440, where it was held, that a possession for more than twenty years, by the plaintiff, had ripened into a title, and that he might recover, although the

paper title was not in him. See also *Day vs. Alverson*, 9 *Wend.*, 223.

There are cases to the same effect in some of the other State courts, to which we deem it unnecessary to refer, concluding our views, in affirmance of the first proposition, by referring to the opinion of Mr. Justice Washington, in *Holtzapple vs. Phillibaum*, 4 *Wash. C. C. Rep.*, 367, 368, who held it to be unquestionable law, that an adverse possession in the defendant for a length of time, which will prevent a plaintiff from recovering in ejectment, will also give to the plaintiff, who has had such a possession, a right upon which he may recover; and that to defeat this right when asserted and proved, the adverse party must show either a suit brought, or an entry made within the time which the law prescribes. To the same effect, see the opinion of Thompson, J., in *Jackson vs. Porter*, 1 *Paine's C. C. Rep.*, 457. *Angel on Limitations*, ch. 31.

We are next to consider whether the plaintiff had had such possession of the premises in dispute, as entitled him to maintain this ejectment. There is great diversity among the cases on the subject of adverse possession. While they agree that it must be adversary, exclusive and continuous, they differ as to the tests by which its character is to be determined. In most of the cases actual enclosure has been held to be indispensable; but in some this has not been considered important, where the nature and position of the property, and the mode of using it, were such as to afford manifest evidence to all persons of an intent to claim the land by adversary possession. *Ewing vs. Burnet*, 11 *Peters*, 41, is a case of this kind. See also 2 *Smith's Leading Cases*, 413, 414, 415. This absence of uniformity is to be observed generally, if not always, where the possession has been held by one party only, and not by both, as a mixed possession. In the latter case, whatever the law may be elsewhere, there can be no doubt that it has been long settled in Maryland, that actual enclosure is necessary to defeat the title of the real owner. In a recent case in the late Court of Appeals, in which the subject

is discussed, (*Casey vs. Inloes*, 1 *Gill*, 496,) it is said, "the general principle is now too well settled to require authorities in its support, that a *possessio pedis* of part of a tract of land, by him who is legally entitled to the entirety, carries with it the possession to the extent of his legal rights; and no wrong-doer can, in contemplation of law, by entry or the exercise of acts of ownership thereon, acquire the possession of any part thereof without actual enclosure, or ouster, actual or presumptive." And at page 503, "that the title of the rightful owner, in a case of mixed possession, cannot be barred by adding together the different possessions and acts of the defendant, at long intervals, in point of time, so as to make out twenty years, is a principle also well settled. Upon every discontinuance of the possession of the wrong-doer, by operation of law, the possession of the rightful owner is restored, and nothing short of actual, adverse and continuous possession for twenty years, can destroy his rights, or vest a title in the wrong-doer." 2 *H. & J.*, 87, 112. 5 *Do.*, 264. And where different persons enter upon land, in succession, without title, the last possessor cannot tack the possession of his predecessors to his own, so as to make out continuity of possession, sufficient to bar the entry of the owner. The possession of one cannot be the possession of the other, because the moment the first occupant quits the possession, the legal possession of the owner is restored, and the entry of the next occupant constitutes him a new disseizor. There is no privity between them. 3 *Wash. C. C. Rep.*, 479. There is a diversity among the cases on this last point, but we think that the correct rule is laid down by Judge Washington, and that it is within the reason of the doctrine stated by the Court of Appeals, 1 *Gill*, 503, above quoted.

That the lot in controversy is within the lines of Armstrong's deed, according to this record, cannot be controverted. The beginning and the first and second lines of the whole tract of Darnallsylvania, are admitted to be correctly located on the plots. The appellant's title papers call for and are located precisely as are the first and second lines of the whole

tract, as far as they profess to run together. The effect of this admission, then, is to establish the beginning of Armstrong's third line so far south on the second line of "Darnallsylvania," as to locate the land in dispute north of his third line; because, assuming, as the locations admit, that the beginning of the appellant's second course is at the stone and hickory, (black G,) it is impossible to run his second line according to his title papers without arriving at red A, which is south of the woods claimed by the plaintiff, and consequently within the lines of defendant's deed.

It is said, however, and the evidence shows, that some of those under whom the appellant claims, admitted that this lot belonged to Courtenay, and that Risteau and Chambers had planted a boundary and agreed upon the line as now claimed by the appellee. These admissions may be evidence of boundary, and of the true location of the third line of appellant's deed and of possession, but they certainly cannot be relied on to prove title in the appellee by possession, so long as the admissions above mentioned are on the record. 1 *Greenl. Ev.*, *sec.* 203. If these locations had been disputed, and a question submitted to the jury as to the correct running of those lines of the whole tract for which the appellant's deeds call, the fact of planting the boundary, and the *admissions of* Chambers, might have been of importance, as tending to show that the land in controversy was not within the lines of his deeds, and that the doctrines of mixed possession did not apply. But we do not perceive how the jury could have found for the plaintiff, on any such question, on the evidence before them, inasmuch as they were concluded by the admissions of the parties, and must have found the beginning and first and second lines of the whole tract, and, consequently, the defendant's third line, as located by him. *Hughes vs. Howard*, 3 *H. & J.*, 9. *Wilson vs. Inloes*, 6 *Gill*, 160, 164. By the prayers, as submitted by the plaintiff, the jury were at liberty to have found for him, although they might have been satisfied from all the evidence that the land was embraced

within the lines of the appellant's deed, and was a case of mixed possession.

It was insisted on the part of the appellee, that the nature and location of the property, and of the fences, and the conduct of the claimants, were such, as to have given to the plaintiff and to those under whom he claims the exclusive and adversary possession, although there was no fence on the south side, on the principle, that whatever necessarily excluded the defendant and his predecessors from the use and enjoyment of the *locus in quo*, would have the same effect in law, in vesting title in the possessor, as if it had been entirely enclosed. Without saying how far such a state of things would avail the appellee, if the appellant had not shown title to the land, we think that the argument contravenes the Maryland authorities on such questions as that before us, and that these must prevail. It is true, as suggested by the counsel, that at page 504 of 1 *Gill*, the court used the words "actual, adverse and continuous," without mentioning enclosures; but we cannot suppose that they meant to decide that possession, without enclosure, was sufficient, when they had employed that expression on page 500, and referred to the cases in which it had been held to be indispensable to give title to a wrongdoer. Some of these cases were nearly, if not quite, as favorable in circumstances, for the party claiming by possession, as the present is to the plaintiff. If the position of these parties were reversed on the docket, the case would be not very dissimilar from that of *Cheney vs. Ringgold*, 2 *H. & J.*, 87. The plaintiff there, as Armstrong here, was in possession by enclosure of a part of his land. The defendant there, was in possession of a part of the plaintiff's land, by enclosure, as Risteau is of the lot M, lying west of the land in dispute. The defendant proved, that he and those under whom he claimed by descent, (but the appellee here shows no title or privity between himself and the former occupants of the land,) had lived on the land, using the parts exterior to his enclosures, ever since 1762, by cutting wood, rails and other timber thereon, for the use and purposes of the farm; and for

more than twenty-seven years had been in the actual possession, by cultivation and enclosure, of a part of the land, claiming title to the whole. Yet the court said, that the plaintiff was not barred, because it was a case of mixed possession as to all the land not within the defendant's enclosures, though he was barred as to the land enclosed and cultivated for more than twenty years. It does not appear by whom these fences were erected; it is certain that the appellee did not put them there. Their erection was no act on his part showing an intention to claim the property. He used the property as he found it, in the manner spoken of by the witnesses. If this was a fence of the former owners of Armstrong's land, it cannot be called an adverse possession by any person outside of the fence, because that would be to make a man turn himself out of possession of his own land, when he may place his fences on any part of his property, without thereby abandoning his title to what may be left out. In *Casey vs. Inloes*, the court said that a single line of fence did not make an adverse possession, it was an enclosure or occupation only of what the fence covered. And in 24 *Maine*, 29, it was held, that a single line of fence, that did not appear to complete an enclosure, although it ran across the land of the real owner, and cut off one part from the other, (one part being the disputed land,) did not amount to a dissezin at common law. Why, then, should fences on three sides of a square or oblong piece of land have a more conclusive effect, more especially when in one of them there is a gate through which the owner has access to the land, and, consequently, is not necessarily "excluded from enjoying or participating in the advantages derivable from the possession?" 3 *H. & McH.*, 622. If this had been a possession fence, surrounding the land, such as that mentioned in 1 *Gill*, 500, it would not have been sufficient, and we think that such a mode of taking possession would have been more definite and notorious, as evincive of a hostile invasion of the owner's rights, than were all the facts on which the appellee founded his prayers.

The appellee's counsel relied in argument upon the case of

*Smith vs. McAllister,* 14 *Barbour,* 434, which does, in its general doctrines, sustain his views; but it is to be observed, that the facts of that case come within the principle of mixed possessions, as recognized in this State. The statement shows that "the land in dispute had, for over twenty-five years, been enclosed within the defendant's enclosure, and occupied and used by him, and those under whom he claimed, and tilled and cultivated in common with their other lands." But if this had not been so we should not, upon this one authority of a sister State, overrule the decisions of our own highest tribunal, requiring actual enclosure to vest title in a party claiming by possession alone in cases of mixed possession. The case of *Brooke vs. Neale,* (*Dorsey's Ejectment,* 40,) also relied upon by the appellee, we think, does not apply to the one before us. We have shown, in *Hoye vs. Swan,* (at the present term,) that the defendant in that case was in possession, claiming under deeds for the very land in dispute, when the right of the plaintiff accrued, and therefore he occupied a very different attitude from that of the appellee here.

For these reasons we think that the prayers of the appellee should have been rejected, and that the third of the appellant should have been granted. The first and third of the plaintiff also claimed a verdict for him, if the jury should find that the acts mentioned were exercised openly, and with the knowledge and consent of the adjoining proprietors, under whom the defendant claims, and that they had recognized the fence cornering at the cherry tree as a division fence between them, and those under whom the plaintiff claims. If the acts of ownership relied upon were committed with the consent of the real owners of the land, no title by possession could be founded on them, as assumed by the first prayer, no matter how openly they were done. One of the elements of such a title is, that the possession must be a hostile invasion of another's rights. 9 *Wheat.,* 241, 288. If there was consent on the part of the owner, the entry for the purpose of doing the act was not tortious. *Gwynn vs. Jones,* 2 *G. & J.,* 173. And as to the presumption of a deed, insisted upon by the

third prayer, the law requires that the possession should be actual, adverse, exclusive and continuous, and under claim of title, the finding of which facts are not left to the jury.  1 *Gill,* 505.   These prayers also authorized the jury to find for the plaintiff, upon being satisfied that the fence cornering at the cherry tree had been recognized as the division line, not noticing the fences on the east and west of the lot, without which they had no guide, but were left to conjecture as to the extent of the plaintiff's claim and right to recover.

The first prayer on the part of the appellant presents a different question.   It claims a verdict for the defendant below, upon the hypothesis that the real owner of land, though not in actual possession of any part, may maintain his title, as against a wrong-doer, claiming by a possession commenced, continued and accompanied by acts of ownership, as proved in this cause, provided the land in dispute be not enclosed. It is not necessary here to discuss this question, because it was as directly presented in the case of *Hoye vs. Swan,* in which we decided, that as between the real owner and one claiming by possession alone, and showing no title, there is no difference in law upon the question of title by adversary possession, whether the owner be in possession of any part of his land or not.   In both, the title by possession prevails only to the extent of actual enclosures.   The prayer, we think, should have been granted for the reasons assigned in that case.

The appellant's second prayer, as to the admissibility of evidence of *sparsim* cuttings, was properly rejected.   Where an object, as a fence, is located on the plots, and known to the witness, he may give evidence of any cutting on, or user or cultivation of the land, in any particular direction from the fence or other object located.   And a witness sworn on the survey may give evidence at the trial, of the general possession of the land located on the plat, and of acts of ownership generally over the same, without any particular location of the places where the acts of ownership were performed. 4 *H. & McH.,* 128, *note.   Bowly vs. Deady, December term* 1829, cited in *Dorsey's Ejectment,* 62.

Reference was made in argument to a supposed mistake
in locating some of the lines of the whole tract, under a com-
mission to mark and bound, but this commission is not in
evidence, and the testimony of the witnesses is not sufficiently
definite to enable us to determine in what the mistake, if any,
consisted. We decline expressing any opinion on this part
of the case.

*Judgment reversed and procedendo awarded.*

*Note.*—The appellant subsequently moved the court to re-
fuse a *procedendo* in this case, which motion was overruled.