## THE BOOK DEPOSITORY OF THE BALTIMORE ANNUAL CONFERENCE OF THE METHODIST EPISCOPAL CHURCH IN BALTIMORE CITY AND J. HARRY MURRAY *vs.* THE TRUSTEES OF THE CHURCH ROOMS FUND OF THE METHODIST EPISCOPAL CHURCH OF BALTIMORE CITY, DAVID H. CARROLL, SUMMERFIELD BALDWIN AND BENJAMIN F. BENNETT.

*Corporations*: *voluntary dissolution; creditors' right.* *Trusts*: *no failure for want of trustee; relief in equity.*

*Funds*: *donations to* —; *rights of the subscribers.*

At the instance of the appellant, the Methodist Episcopal Book Depository, a corporation organized to supply the Methodist Church with suitable buildings for religious, social and other meetings, subscriptions were made to a fund to provide rooms, free of rent, as a place of meeting for preachers, missionaries, etc.; the shares of stock and cash received and subscribed for that purpose were carried in the name of an individual on the books of the corporation as a separate account; later they were converted and invested as an entirety in the shares of the said corporation for the Church Room Fund. The corporation supplied the room for the meetings, etc., for a number of years; but on the destruction of its building by fire, it sold its lot and attempted to go into voluntary dissolution, and distribute the proceeds of the liquidation among all its shareholders, excepting to the account of the shares of stock representing the Church Room Fund. *Held,* that for the corporation, after having received the benefits of the fund; no longer to provide the accommodations that had been agreed to, and to distribute the proceeds of its liquidation among the other stockholders, with no reservation for the protection of the shares of stock for the Church Room Fund, would operate as a fraud.      p. 93

The original certificate of the stock of the corporation held for this fund was lost or destroyed, but there being no evidence that it was ever transferred, it was further held that the certificate was outstanding, representing the investment for the Church Room Fund, and was entitled to its *pro rata* share in the liquidation of the assets of the corporation, the Book Depository.                                          p. 96

The beneficiaries of the fund, while not creditors of the corporation in the sense that any money or property should pass to them, were entitled to a performance of the obligation which had been undertaken by the appellant corporation.                                                         p. 94

Where contributions, subscriptions or donations made to a particular fund were absolute gifts in furtherance of the objects for which the fund was originated, the subscribers, etc., have no individual claim upon the fund.                          p. 91

Although a bill of complaint does not specifically pray for the creation of a trust, if it contains the ususal prayer for general relief, equity will give effect to a trust which is warranted by the evidence.                                      p. 94

Though religious organizations for whose benefit a fund was created to establish a meeting room, to be given free of rent, were unincorporated, that fact will not prevent equity from declaring a trust to be created in such a fund.       pp. 94-95

Where upon the establishment of a fund for the purpose of providing a meeting room for religious organizations, a particular person was designated as treasurer, and in that capacity collected a certain sum and turned it over to a corporation for the purchase of its stock, and receipted for the stock certificate as "treasurer," although such shares of stock were not made out in his name, but were made out in the name of the treasurer of the "Church Room Fund," he became trustee of the fund as well as its treasurer.       p. 96

It is not necessary for the appointment of a trustee, that he be specified by name, or that the word "trustee" be used, if it satisfactorily appears that the duties to be performed are such as are performed by one who is a trustee, and that

the person is designated with sufficient precision to leave no doubt as to his identity.                                      pp. 95-96

A corporation by dissolving itself can not defeat the right of its creditors.                                                        p. 94

A Court of equity will not allow a trust to fail for want of a trustee.                                                                 p. 94

If the officers die, resign or refuse to act, and the stockholders refuse or neglect to elect others, equity will appoint a receiver to wind up its affairs.                                          p. 94

*Decided January 9th, 1912.*

Appeal from the Circuit Court No. 2 of Baltimore City (STUMP, J.).

The cause was argued before BOYD, C. J., PEARCE, URNER and STOCKBRIDGE, JJ.

*Frank Gosnell* and *George Weems Williams,* for the appellants.

*John Philip Hill* and *Bernard Carter,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

In the year 1871 the Book Depository of the Baltimore Annual Conference of the Methodist Episcopal Church in Baltimore City was duly incorporated under the General Laws of the State of Maryland. One of the purposes of the corporation as set forth in its charter was "The accommodation of the ministry and membership of said church with suitable buildings for religious, social and other meetings." The corporation thus formed secured a location at 112 W. Fayette street, which it occupied until the fall of 1874, when, having purchased the property then known as Nos. 166 and 168 W. Baltimore street, it removed to that location. At a meeting held on November 2nd, 1874, of

either the stockholders or the board of directors, the following resolution was presented and adopted:

"*Resolved*: That the committee be instructed to make arrangements for a reception at our new rooms of the Bishops of our church sometime during their session in this city next month; and, that they also make arrangements for raising at the same time a fund that will justify the society in setting apart the new hall for general church purposes free of rent."

As a part of the exercises referred to in the foregoing resolution, a dinner was given at the Carrollton Hotel, at which a proposition was brought forward to raise a fund of $10,000, if possible, which should constitute a Church Rooms Fund, the income of which was to be paid over to the Depository as compensation for the fitting up and maintaining a commodious room for meetings of the Baltimore preachers, the Missionary Society, the City Missionary and Church Extension Society, the Preachers' Aid Society, the Emory Grove Camp Meeting Association, the Women's Foreign Missionary Society and others. At this dinner subscriptions were taken from individuals present for various amounts, but which amounts in the aggregate fell far short of the $10,000 desired. Apparently the next step which was taken in the matter was on February 3rd, 1875, at a meeting of the board of directors of the Depository, when the following action was had:

"On motion of L. H. Cole resolved that the agent of the depository receive the money paid in on the Church Rooms Fund to keep a separate account of the same and use it in the transaction of his business until further instructions from the board."

And a week later, at a meeting held on February 10th, the fund so raised and to be raised were authorized to be invested. This fund was apparently paid, partly in cash, and partly in donations of the capital stock of the Methodist Book Depository, and finally reached the sum of $3,050.

The principal witness called by the plaintiff was Dr. David H. Carroll, for many years the agent of the Book Depository and the designated recipient of subscriptions intended for the Church Rooms Fund, under the resolution of February 3rd, 1875. Dr. Carroll's evidence, given entirely from memory, and after a lapse of over thirty years, is necessarily rather vague, and but for the books of the Depository which have been preserved containing entries, unfortunately meagre and at times vague, it would be a matter of extreme difficulty to reach any conclusion in the case. It does appear from the entries that there was apparently some shifting back and forth as between the sinking fund of the Depository and the Church Rooms Fund, stock of the appellant corporation, which finally culminated in February, 1881, when there was issued as appears from the stub of the stock book a certificate No. 145 of the capital stock of the appellant, for 61 shares to "Treas. Church Rooms Fund," and receipted for on the 25th February, 1881, by "D. H. Carroll, Treas," and on the same day, certificate No. 147 for 61 shares, also "issued to Treasurer Church Rooms Fund," and receipted for on the same day, February 25th, 1881, by "D. H. Carroll, Treas."

The Methodist Book Depository continued in business down until the fire of 1904, and during all that time continued to provide the associations before enumerated with accommodations for their meetings, and as dividends were declared upon the stock, they appear to have been covered in to the current receipts of the Book Depository. After the fire, the Depository, which had also throughout its existence been conducting a commercial business, discontinued business, sold its lot, and of its own accord and without any intervention by a Court, began a liquidation of its business and a distribution among the shareholders. As appears by the amended bill and answer, it was proposed in this liquidation to distribute all the sums realized among the stockholders other than, and without taking into account, the 122 shares issued as hereinbefore stated. To prevent this dis-

tribution, and to preserve this fund, together with its proportionate increase from the enhanced value of the assets, for the original purposes of the donors this bill was filed.

The plaintiffs are David H. Carroll, Summerfield Baldwin and Benjamin F. Bennett, three of the subscribers to the original Church Rooms Fund, and the fourth is a corporation by the name of "The Trustees of the Church Rooms Fund of the Methodist Episcopal Church of Baltimore City," incorporated under the provisions of the General Laws of Maryland, on the 5th day of February, 1909. It clearly appears from the evidence that the subscriptions, contributions or donations made to the Church Rooms Fund were absolute gifts in furtherance of the objects for which the fund was inaugurated, and it, therefore, follows that none of the individual plaintiffs can have any claim whatever, as individuals, to share in or participate in the liquidation of the Book Depository on account of those 122 shares. The corporate plaintiff, which did not come into existence until long after all of the events connected with the origin and administration of this Church Rooms Fund, could only have an interest by a somewhat circuitous application of the doctrine of *cy pres.* But the objections to this are: First, that we have not here the technical charitable trust as defined by Mr. Justice Gray in *Jackson* v. *Phillips*, 14 Allen, 556, and, second, that the *Statute of 43d Elizabeth* is not and never has been in force in the State of Maryland; *Dashiell* v. *Attorney General*, 5 H. & J. 392; *Halsey* v. *The Convention*, 75 Md. 275.

The important question in this case is, whether or not the fund known as the Church Rooms Fund, and so described in the minutes, and which was contributed either in cash or by the donation of the capital stock of the Book Depository, and which was represented by the two certificates aggregating 122 shares, did or did not constitute a trust fund so as to properly come under equitable jurisdiction. Through all of the haze which the lapse of time has thrown

over this matter, a few facts stand out clearly; that the money or stock given, even if not given upon an express trust, were given and received upon a condition. This appears both from the testimony of Dr. Carroll, the minutes of the meeting on February 3d, which required it to be kept in a separate account, the report of the committee on the Church Rooms Fund in February, 1876; January, 1877; February, 1877, all of which antedated the establishment of the Sinking Fund Committee, the report of the agent of the Depository in 1880 and 1881, and finally the issuance to Dr. Carroll *as treasurer* of the certificates of stock for 122 shares, and a portion of which shares were by the report of 1882 shown to have been purchased from the Sinking Fund Committee.

The creation of a trust ordinarily is required to be with a reasonable degree of definiteness and precision, and many cases might be cited where the Courts have refused to construe a trust owing to the uncertainty of the language used to create it, or of the trustee in declaring its creation; but the cases are comparatively few which have arisen in the precise manner in which the question now arises. In the case of *Ruhe* v. *Ruhe,* 113 Md. 601, this Court citing from the case of *Coyne* v. *The Supreme Conclave,* 106 Md. 57, says: "If a man in confidence of the parol promise of another to perform an intended act should omit to make certain provisions, gifts or otherwise, such a promise would be specifically enforced in equity, although founded on a parol declaration creating a trust contrary to the *Statute of Frauds,* for it would be a fraud upon all parties to permit him to derive a benefit from his own breach of duty and obligation." In this case money and stock were contributed by various individuals upon what they believed to be a promise upon the part of the board of directors of the Book Depository to afford an appropriate meeting room for the gratuitous use of the church for all proper uses under their direction. If now when the corporation which has received

these benefits no longer affords the accommodation, and in
addition to that proposes to distribute the proceeds derived
from its liquidation among other stockholders, with no reser-
vation for the protection of the shares of stock which the
corporation itself had issued, and which constituted an evi-
dence that the fund represented by these certificates was set
apart for a specific purpose, to sanction such a proceeding
would, under the language quoted, operate as a fraud, both
on the original contributors and upon the associations or
organizations for the benefit of which the contributions were
made.   Reference was made in the argument to the cases of
*Braithwaite* v. *The Attorney General,* L. R. 1 Chan. 511
(1909), and *Cunnack* v. *Edwards,* L. R. 2 Chan. 679
(1896), but in both of those cases the question arose by
reason, not of the non-existance of a trustee to carry out
and perform the trust, but because there was no proper
beneficiary of the trust, and these cases are thus readily
distinguishable from the present case.  A case which much
more nearly approaches the present case, is that of *Spiller* v.
*Maude,* Jurist N. S. 10 Pt. 1, 1864, page 1089, in which
Sir Saml. Romilly required the fund there in question to be
paid into the Court; but that likewise arose from the
approaching condition of there being no beneficiary entitled
to the income of the fund, and the last survivor was making
application to have the entire fund, principal as well as
income, paid over to her, which application the master of the
rolls denied, and required the fund to be brought into Court,
that upon her death it might be treated as *bona vacantia.*
When we turn to the American rule for a situation like the
present where the question arises as a consequence of the
voluntary dissolution of a corporation which apparently had
control of a fund for a series of years, and in consideration
of that had carried out the purpose specified when the fund
originated, we have an entirely different proposition to deal
with.   The beneficiaries, or objects to be promoted by those
who contributed this fund are not creditors in the sense that
there is any money or property as such to pass to them, but

they are in a position of being entitled to the performance of an obligation by a body which had theretofore been rendering an important service, and in a wider sense, occupy a position not essentially dissimilar from that of a mercantile creditor. In the one case it is money which is due, and in the other the performance of a service or an obligation which is due, and in 10 *Cyc.* 1330, it is said, "The dissolution by a voluntary act of its shareholders does not have any greater effect in putting an end to the powers of the corporation than would be produced by the expiration of its charter or a decree of forfeiture;" and again on page 1320, "The death of a corporation no more impairs the obligations of its contracts than does the death of a natural person, but its assets remain a trust fund or pledge for the payment of its creditors and shareholders, and a Court of equity will lay hold of those assets and see that they are duly collected and justly applied," and on page 1321, "a corporation can not by dissolving itself defeat the rights of its creditors, but if its officers die, resign or refuse to act, and its shareholders neglect or refuse to appoint others in their place, a Court of equity which never allows a trust to fail for want of a trustee, will interfere and appoint a receiver for the purpose of winding up and putting an end to the concern."

Neither the original nor the amended bill of complaint in this case contains any specific prayer that the Court shall declare a trust; but it does contain the usual prayer for general relief, and under this where the evidence warrants it, a Court of equity will never hestitate to give effect to a trust where the facts justify such a conclusion. Therefore unless there be some additional reason why a trust should not be declared as regards the 122 shares of stock of the depository, the law amply warrants it.

Objection is made to implying a trust in the present case upon the ground of the indefiniteness of the objects sought to be benefited, and the further fact that some or all of these supposed beneficiaries are unincorporated associations. Num-

erous cases have been cited upon the theory that these bodies
would come within the scope of the rule laid down in such
cases as the *Baptist Church* v. *Shively,* 67 Md. 493; and
*Crisp* v. *Crisp,* 65 Md. 422; but to place any such construc-
tion upon the Charter of the Methodist Book Depository
would involve an extension of that doctrine far beyond any-
thing which was in contemplation when those cases were
decided. Nor is it necessary to do so in the present instance.
All of the objections of this character which have been urged
in the present case, were pressed upon this Court in the case
of *Snowden* v. *Crown Cork & Seal Co.,* 114 Md. 650, and
were disposed of by the very careful and able opinion pre-
pared by JUDGE URNER in that case. In that case, as in
this, the question arose, not in the course of construction of
any will or deed of trust, but with regard to a gift *inter vivos*
where the donee and beneficiaries alike were unincorporated,
and the gifts, which in that case also were shares of stock,
were sustained. A further discussion of this question would
be simply a repetition of what was said in the opinion filed
in that case, and no sufficient reason has been suggested in the
argument why this Court should now reverse the rule which
was there laid down.

The next question for consideration is, whether there was
a sufficient designation of a trustee in this case, and whether
that trustee was capable in law of taking the gift. It clearly
appears both from the minutes of the directors, and from the
stub of the stock-certificate book that David H. Carroll was
the treasurer of this Church Rooms Fund. From the testi-
mony he appears in that capacity to have collected what
money was collected, to have turned it into the Book Deposi-
tory for the acquisition of stock of that corporation, and to
have receipted as such treasurer for the certificates of stock
representing the 122 shares. These, so far as it is possible
now to determine, were not made out in his name, but were
made out in the name of the treasurer of the Church Rooms
Fund. It is not necessary for the valid appointment of a
trustee, that he shall be specified by name, or that the word
"trustee" shall be used, provided it appears to the satisfac-

tion of the Court that the duties to be performed are such as are properly to be performed by one who is a trustee, and that the individual or corporation is designated with sufficient precision to leave no doubt as to the identity.   There can be no question but what David H. Carroll, as treasurer of the Church Rooms Fund, was originally the trustee for this fund, as well as treasurer of it.   But he assumed that when he ceased to be the agent of the depository, he at the same time ceased to be the treasurer of this fund, and the trustee, and thereafter performed no duties with regard to it.   He testifies that at that time he turned the certificates of stock over to the Rev. John Lanahan, who succeeded him as agent, but whether the duties of treasurer and trustee were thereafter performed by Dr. Lanahan or by the Book Depository, nowhere satisfactorily appears from the record in *this* case. The argument is made that the Book Depository was incapable of acting as trustee.   With this view we are unable to agree, in view of the fact that one of the declared objects of the formation of the corporation was "the accommodation of the ministry and membership of said church with suitable buildings for religious, social and other meetings."   The object sought to be attained by the donors was distinctly in line with this purpose.

The original certificates for the 122 shares have apparently disappeared and been lost or destroyed; but there is nothing to show that there was ever any transfer of them to any person or corporation, and they are therefore outstanding, representing the investment of this fund, which must now be regarded as a trust fund, and as such entitled to share *pro rata* in the liquidation of the assets of the corporation, the Book Depository.

From what has been said, it follows that the decree of the Circuit Court No. 2 of Baltimore City in this case will be affirmed.

> *Decree affirmed, costs to be paid by the Book Depository of the Baltimore Annual Conference of the Methodist Episcopal Church in Baltimore.*